FRESH KIST PRODUCE, LLC., Plaintiff,

v.

CHOI CORPORATION, INC. d/b/a Washington Wholesale Produce Company, Norfolk Banana Distributors, Inc., and Berkley Tomato Company, Inc., Defendants.

No. Civ.A. 01–1834(RMU).

United States District Court, District of Columbia.

July 31, 2002.

**4**

Michael J. Keaton, Keaton & Associates, PC, Glen Ellyn, IL, John P. Van Beek, Young, Goldman & Van Beek, Alexandria, VA, for plaintiff.

Mary Jane Fassette, Conlan, Frantz, Phelan & Pires, LLP, Washington, DC, Patricia Rynn, Mindy L. James, Rynn & Janowsky, Newport Beach, CA, for defendant J.C. Watson Co., Inc.

Daniel M. Press, Chung & Press, McLean, VA, for defendant Choi Corporation.

Stephen P. McCarron, McCarron & Deiss, Washington, DC, for defendants Norfolk Banana Distributors, Inc. and Berkley Tomato Co., Inc.

Paul Pascal, Anton N. Weiss, Pascal & Weiss, Washington, DC, for claimants Cardile Bros. Mushroom Pkg., Inc., Edward G. Rahll & Sons, Inc., and First Class Produce, Inc.

## MEMORANDUM OPINION

URBINA, District Judge.

GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT J.C. WATSON'S MOTION FOR SUMMARY JUDGMENT; OVERRULING THE PLAINTIFF'S OBJECTION TO PROOF OF CLAIM

### I. INTRODUCTION

This case involves a statute not often examined in this court, the Perishable Ag-

ricultural Commodities Act ("PACA"), 7 U.S.C § 499a *et seq.* Congress designed PACA to give extra protection to sellers of perishable agricultural commodities because of their unique situation vis-à-vis the companies who purchase their agricultural commodities. PACA requires produce dealers to maintain proceeds from produce sales in floating trusts so that if the dealer becomes insolvent, the produce sellers can claim a pro rata share of the trust funds before other creditors claim them. 7 U.S.C. § 499a *et seq.* The plaintiff in this case, Fresh Kist Produce ("Fresh Kist"), is a seller of perishable agricultural commodities and a PACA trust beneficiary. Defendants J.C. Watson ("JCW"), Norfolk Banana ("Norfolk"), and Berkley Tomato ("Berkley") are also sellers of perishable agricultural commodities and PACA trust beneficiaries. Defendant Washington Wholesale Produce Company ("WWP") is an insolvent produce dealer or buyer and PACA trustee.

This matter is before the court on the plaintiff's and defendant JCW's cross-motions for summary judgment. The plaintiff alleges that the defendants JCW, Norfolk, and Berkley received monies from WWP when WWP was insolvent, in violation of PACA. The plaintiff moves for disgorgement of monies paid by WWP to JCW, Norfolk, and Berkley so that the money can be distributed pro rata to all beneficiaries of the WWP PACA trust. Defendant JCW seeks summary judgment on the ground that the law does not support the plaintiff's claim. Both movants also raise several additional minor issues. For the reasons that follow, the court grants in part and denies in part both the plaintiff's and defendant JCW's motions for summary judgment.

### II. BACKGROUND

The plaintiff, Fresh Kist, and the defendants, JCW, Norfolk, and Berkley, all sell perishable agricultural commodities in in-

terstate commerce. Pl.'s Statement of Undisputed Facts (Pl's Statement) ¶ 1; Def. JCW's Statement of Undisputed Facts (Def.'s Statement) ¶ 1; Defs' Norfolk and Berkley's Opp'n at 1. Defendant WWP (also known as Choi Corporation) is an insolvent produce dealer. Def. WWP's Listing of Accounts and Assets filed Oct. 5, 2001. WWP is the trustee of the statutory floating trust created by PACA for the benefit of all sellers of perishable agricultural commodities. Defs.' Norfolk and Berkley Opp'n at 1.

Some of this case's critical facts are from a prior case, C.A. No. 01–1225: On June 5, 2001, JCW filed a complaint against WWP for breach of contract and breach of trust, averring that WWP owed JCW $70,946.90 for produce JCW had sold to WWP. Def.'s Statement ¶ 17. In its complaint, JCW specifically stated that WWP was insolvent, and this provided the basis for JCW's claim that WWP dissipated trust assets by paying other suppliers. JCW's Compl. ¶ 19 (C.A. No. 01–1225). After June 5, 2001, in response to this complaint, WWP agreed to pay JCW $4,729.80 each week until the entire amount was paid. Def.'s Statement ¶ 18. WWP defaulted after several payments, however, and on August 6, 2001, JCW filed an Amended Complaint to obtain the balance owed by WWP. Id. ¶ 26. JCW's case was resolved on August 7, 2001 with a Stipulation for Injunction and corresponding Consent Order pursuant to which WWP made payments to JCW. Id. ¶ 29; Consent Order dated Aug. 10, 2001. WWP's payments to JCW made pursuant to both the parties' informal settlement, motivated by JCW's June 5, 2001 Complaint, and the Consent Order totaled $59,189.40. Def.'s Statement ¶¶ 31–35.

In early August 2001, attorneys for Fresh Kist contacted JCW's attorneys and asked to join JCW's claim against WWP. Cassell Aff. ¶ 13. The attorneys for JCW

asked James Watson, Chief Executive Officer of JCW, if he would waive the potential conflict of interest if JCW's attorneys represented Fresh Kist. Watson Aff. ¶¶ 12, 14. Mr. Watson was not willing to do so. Id. Subsequently, Fresh Kist obtained separate counsel and filed the present lawsuit. Id.

On August 28, 2001, the plaintiff initiated this case with a complaint and a motion requesting (1) a temporary restraining order and (2) entry of an order establishing a non-party PACA claims procedure. Next, on August 29, U.S. District Judge Kollar–Kotelly issued a temporary restraining order that effectively froze WWP's PACA trust assets. Order Granting Motion for TRO dated Aug. 29, 2001. The temporary restraining order required WWP to pay $11,757.50, the remaining amount that WWP owed JWC pursuant to the Consent Order in C.A. No. 01–1225, into the court's registry until the resolution of this case. Id.

The instant case involves amounts owed by WWP to sellers of produce, Fresh Kist, JCW, Norfolk, Berkley, and other claimants, pursuant to PACA. The dispute centers on payments made by the dealer, WWP, to defendant-sellers after WWP became insolvent. Def. JCW's Mot. for Summ.J. at 12; Pl.'s Mot. for Summ.J. at 3. On August 31, 2001, this case was assigned to this member of the court. Then, on September 24, 2001, this court issued an order establishing a PACA trust and a claims procedure for the beneficiaries ("PACA Claims Order") pursuant to which a number of companies who sold produce to WWP for which they had not received payment filed PACA claims against WWP. Subsequently, Fresh Kist and JCW filed cross-motions for summary judgment.

Fresh Kists's main claim in its motion for summary judgment is that JCW, along with Berkley and Norfolk, must disgorge PACA benefits received from WWP after

they learned that WWP was insolvent. Pl.'s Mot. for Summ.J. Fresh Kist relies heavily on the fact that JCW's June 5, 2001 complaint against WWP in C.A. No. 01–1225 *states* that WWP was insolvent. Pl.'s Mot. for Summ.J. at 8. Fresh Kist contends that this fact demonstrates JCW's knowledge of WWP's insolvency at the time it sought to enforce its PACA rights. *Id.* Nowhere in JCW's opposition does JCW contest the accuracy of the allegations in its complaint against WWP. Fresh Kist claims that payments made by WWP to JCW pursuant to the Consent Order depleted the trust assets to such an extent that other claimants will receive nothing, thereby making those payments to JCW a breach of the trust. *Id.* at 2. Fresh Kist asks the court to compel JCW to disgorge the $59,189.40 received from WWP so that the money can be placed in the PACA trust and distributed, pro rata, among all beneficiaries. JCW also moves for summary judgment, arguing against disgorgement.

Today, this court grants the portion of Fresh Kist's motion for summary judgment that requests disgorgement of $59,189.40 from JCW. This court denies Fresh Kist's arguments that JCW (1) lost its PACA trust beneficiary status, (2) over-reported its trust claim, and (3) failed to attach documents to its PACA trust claim. Additionally, this court denies Fresh Kist's motion for summary judgment against Norfolk and Berkley. This court grants JCW's motion for summary judgment regarding its claim that it is a qualified PACA trust beneficiary. This court denies JCW's arguments that (1) it did not breach or dissipate the PACA trust, (2) Fresh Kist has the burden of proving that funds paid by WWP to JCW came from the PACA trust, (3) JCW had no duty of inquiry, (4) JCW enhanced the value of the trust, (5) Fresh Kist did not exhaust all efforts to recover the balance due it from WWP, (6) JCW is a bona fide purchaser of PACA trust assets, and (7) Fresh Kist must compensate JCW for any attorney's fees.

## III. ANALYSIS

### A. Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the

nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

## B. Legal Standard for Statutory Interpretation

■ The threshold question in any issue of statutory interpretation is whether the words of the statute are unambiguous. *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If so, then the inquiry ends, and the court must follow the command of Congress. *United States v. Wilson,* 290 F.3d 347, 352 (D.C.Cir. 2002). The necessity of adhering to the plain language of a statute is, in one sense, a constitutional necessity since the Constitution prohibits judges from substituting their judgments for the judgment of Congress. *Public Citizen v. Dep't of Justice,* 491 U.S. 440, 468, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring). Consequently, the judiciary must restrict itself to the plain meaning of a statute unless the result reached is absurd or violates an easily perceived legislative purpose. *Kirsanow,* 290 F.3d at 361.

## C. PACA Requires any Beneficiary who Knows that a PACA Trust is Insolvent to Refrain from Obtaining Fund Assets Greater than the Beneficiary's Pro Rata Share

Fresh Kist contends that the defendants must disgorge PACA trust funds recovered from WWP and distribute those funds pro rata among all qualified beneficiaries. While a PACA trustee may ordinarily pay trust benefits in whatever manner she sees fit, when the trustee becomes bankrupt or insolvent, she must distribute trust assets pro rata among beneficiaries. In this section, the court determines that undisputed facts demonstrate that JCW had such knowledge at the time it enforced its PACA rights against WWP. The court also determines that Fresh Kist has no burden to prove that the assets derived from the sale of produce and that JCW cannot rely on the bona fide purchaser defense because it received payments in its capacity as a beneficiary. Thus, the court agrees with Fresh Kist's claim that JCW must disgorge WWP trust funds for pro rata distribution among all PACA beneficiaries. The court disagrees, however, with the plaintiff's motion regarding the disgorgement of Norfolk and Berkley because no evidence supports Fresh Kist's claims against them.

### 1. PACA

■ PACA creates a nonsegregated "floating" trust when a seller of perishable commodities (fruits and vegetables) sells them to a buyer (usually a store or distributor). 7 U.S.C. § 499e(c)(1); 7 C.F.R. § 46.46(d)(1); *In re Lombardo Fruit & Produce Co.,* 12 F.3d 806, 809 (8th Cir. 1993). In the event that the buyer becomes bankrupt with existing receivables, she must hold produce-related receivables from the commodities in trust until she pays all qualified sellers in full. *Boulder Fruit Exp. v. Transp. Factoring, Inc.,* 251 F.3d 1268, 1271 (9th Cir.2001). If the buyer commingles produce related assets with other funds, all funds will become part of the floating PACA trust unless the buyer proves that particular assets did not derive from produce sales. *Sanzone–Palmisano Co. v. M. Seaman Enterprises,* 986

F.2d 1010, 1013–14 (6th Cir.1993). If the buyer fails to prove this, a PACA beneficiary may recover any of the buyer's assets (until the buyer is paid in full) ahead of other creditors should the buyer become bankrupt. *In re Gotham Provision Co.,* 669 F.2d 1000, 1010 (5th Cir.1982).

## 2. PACA Requirements for Beneficiaries When the Trust Is Insolvent

■ Trusts created by PACA are governed by general trust principles. *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1067 (2d Cir.1995). Under trust law, co-beneficiaries are in a fiduciary relationship with each other so that one beneficiary may not secretly secure for himself a special advantage in the trust administration. George Gleason Bogert & George Taylor Bogert, *The Law Of Trusts And Trustees* § 191 at 478 (rev.2d ed.1979). In a case where a trustee was also a creditor of an insolvent trust, Judge Learned Hand expressed the principle underlying the co-beneficiary duty:

> to compel payment when the debtor's survival was as doubtful, as the [beneficiary's] own declarations show that it knew [the debtor's] survival to be, was to secure itself by the depletion of assets which, in the event of [the debtor's] insolvency it would be obliged to share ratably with all of [the debtor's] creditors.... This was a breach regardless of [the debtor's] actual insolvency.... True, it might turn out to be a breach which neither harmed the beneficiary, nor profited the trustee; but that only means that the beneficiaries would need no remedy; it was none the less an act in violation of the bank's duty.

*Dabney v. Chase Nat'l Bank of City of New York,* 196 F.2d 668, 672–73 (2d Cir. 1952). Furthermore, when a trustee pays one beneficiary and becomes bankrupt, a court may set aside this preference. *Id.* at 478–79 (citing *Cunningham v. Brown,* 265

U.S. 1, 13, 44 S.Ct. 424, 68 L.Ed. 873 (1924)). Similarly, when a PACA trust becomes insolvent, its assets are distributed among beneficiaries pro rata. *In re Milton Poulos, Inc.,* 947 F.2d 1351, 1352 (9th Cir.1991). Thus, the court determines that the law compels a beneficiary with knowledge of a trust's insolvency to refrain from securing for itself a greater advantage than its co-beneficiaries.

The main issue before the court is whether PACA requires a beneficiary with knowledge of a PACA trust's insolvency to set up a mechanism for all beneficiaries to submit claims for the remaining funds. Put another way, may a beneficiary with this knowledge seek a judgment for payment of a PACA debt under circumstances when this payment will likely result in the inability of other beneficiaries to recover PACA benefits? PACA's goal—Congress's intent to ensure that sellers of perishable commodities are paid for those goods—must guide the inquiry. *Boulder Fruit Exp.,* 251 F.3d at 1271 (citing H.R.Rep. No. 98–543 at 3 (1983)). The law pertaining to statutory interpretation discussed *supra* also guides the court's decision.

Two courts have faced questions similar to the main issue in this case. In *Finest Fruits, Inc. v. Korean Produce Corp.,* a PACA beneficiary attempted to claim the trust benefits of two co-beneficiaries who filed complaints after the plaintiff on a "first in time, first in right" theory. 1988 WL 96028 (S.D.N.Y.). The court explained that the purpose of PACA is to protect all unpaid sellers or suppliers of agricultural commodities and Congress intended that trustees distribute assets pro rata among beneficiaries when the trust amount is insufficient to pay all unpaid sellers. *Id.* at *2–3 (citing 49 Fed.Reg. 45735–36 (1984)). The court commented, "[a] race to the courthouse with winner

take all does not seem to accord with this purpose." *Id.* Likewise, the court in *Milton Poulos* held that a PACA beneficiary's failure to participate in a bankruptcy proceeding did not preclude the beneficiary's priority above other creditors.[1] *Milton Poulos*, 947 F.2d at 1353. *Finest Fruits* and *Milton Poulos* both indicate that a PACA trust beneficiary who has perfected his claim is entitled to a pro rata distribution of an insolvent trust regardless of whether the PACA trust beneficiary arrived at the courthouse before or after a co-beneficiary.

■ The unresolved portion of the germane law surrounding PACA is whether a PACA trustee must become fully insolvent or bankrupt before resorting to a pro rata distribution mechanism or whether beneficiaries should employ pro rata distribution when one of them has belief or knowledge of the trust's insolvency. The rule of trust law that one beneficiary may not secretly secure for himself a special advantage indicates that knowledge of a trustee's insolvency would preclude a beneficiary's acceptance of trust benefits greater than his own pro rata share. Bogert & Bogert at 478. The *Dabney* opinion quoted *supra* expressly states that a trust's actual insolvency is irrelevant to whether a duty not to deplete assets exists. *Dabney*, 196 F.2d at 672–73. Moreover, the Eleventh Circuit held that:

> Upon a showing that the [PACA] trust is being dissipated or threatened with dissipation, a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets. It should then require the PACA debtor to separate and maintain these produce-related assets as the PACA trust for the benefit of all unpaid sellers having a

bona fide claim. 7 U.S.C.A. § 499e(c)(3). Each beneficiary would then be entitled to its pro rata share. *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir.1990). Accordingly, allowing one beneficiary to obtain a judgment for greater than its pro rata share of an insolvent trust would be contrary to both the duty of co-beneficiaries in trust law and judicial interpretation of PACA.

3. **The Court Grants Summary Judgment in Favor of Fresh Kist's Claim for Disgorgement and Pro Rata Distribution of the PACA Assets that WWP Paid to JCW**

■ This case turns on the preceding section's analysis of a PACA trust beneficiary's duty. In this subsection, the court applies the PACA analysis to the facts of the instant case. The court determines that undisputed facts show that JCW knew the WWP PACA trust was insolvent when it sought and accepted money from the trust. Therefore, JCW must disgorge monies received from WWP.

This case presents one critical fact, which other facts support. In its June 5, 2001 complaint against WWP, JCW claimed that WWP was insolvent: "Plaintiff alleges that Defendants have failed to maintain the trust assets and keep them available . . . *in that* Defendant [WWP] is now insolvent, or is on the verge of insolvency." JCW's Compl. ¶ 19 (C.A. No. 01–1225) (emphasis added). JCW reiterated this language in its first amended complaint of August 6, 2001. JCW First Am. Compl. ¶¶ 19–20, 28–29 (C.A. No. 01–1225). JCW did not allege that WWP *might become* insolvent, but indicated that such insolvency (or near-insolvency) *had already taken place*. JCW's Compl. ¶ 19

---

1. This holding directly contradicts JCW's argument that the court's judgment today somehow penalizes diligent attempts to recover

PACA benefits. Def. JCW's Mot. for Summ.J. at 16.

(C.A. No. 01–1225). Not surprisingly, nowhere in JCW's opposition to the plaintiff's motion for summary judgment does JCW contest the accuracy of this allegation in its complaint against WWP.

In addition to this critical fact, JCW refused to allow its attorney to represent Fresh Kist due to a perceived conflict of interest.[2] Considering the averments in JCW's complaint regarding WWP's insolvency, it seems that JCW based its refusal to allow its attorneys to represent Fresh Kist on knowledge that WWP's assets could not fully compensate more than one PACA claimant. In fact, Daniel Press, counsel for WWP, informed Mary Jean Fassett, counsel for Watson, on about August 8, 2001 that WWP did not have "sufficient assets to satisfy even [JCW's] claim in full. [Press] also told Watson's counsel that [WWP's] liabilities exceeded [WWP's] assets." Press Aff. ¶ 4.

On the other hand, Jon Watson, President of JCW, claimed that it was his belief that "WWP was and intended to stay in operations. [Watson] did not become aware that WWP had ceased operations." Watson Aff. ¶ 11. Mr. Watson went on to say, however, that he perceived a conflict of interest between JCW and Fresh Kist and explained that he understood that PACA only provided a pro rata distribution of trust assets in the event of trustee bankruptcy or cessation of operations. *Id.* ¶¶ 12, 14. Mr. Watson's conclusions of law are inconsistent with the court's. Mr. Watson's affidavit does not refute the knowledge of insolvency expressed in JCW's complaints against WWP. Although Mr. Watson indicated that he had no reason to think that WWP would cease operations, he also indicated that he perceived JCW's interests to be at odds with Fresh Kist's when he mentioned his decision regarding JCW's attorneys' conflict of interest. *Id.* Ceasing operations is different from being insolvent. Furthermore, Watson's refusal to allow JCW's attorneys to represent Fresh Kist indicates a belief that WWP's PACA trust assets could not fully compensate both Fresh Kist and JCW. Though Mr. Watson's affidavit indicates an absence of bad faith on JCW's part, it does not dispute the fact that JCW knew that WWP was insolvent.

 The actions that JCW undertook to collect PACA benefits were contrary to law. As discussed *supra* in Section C(2), an insolvent or bankrupt trustee must distribute PACA assets on a pro rata basis to beneficiaries who preserve their claims. *Milton Poulos, Inc.*, 947 F.2d at 1352. Also, general principles of trust law forbid a beneficiary from using knowledge of a trustee's financial difficulty to secure a greater benefit for himself. Bogert & Bogert at 478.

Drawing all justifiable inferences in JCW's favor, the court determines that undisputed evidence indicates that at least by June 5, 2001 JCW knew that WWP was insolvent, and JCW nevertheless enforced its PACA beneficiary rights by receiving

---

**2.** The parties' characterizations of this refusal diverge. Thomas Cassell, CEO of Fresh Kist, claims that Patricia Rynn, counsel for JCW, told him on August 27, 2001 that her firm could not represent Fresh Kist because JCW did not "want to share funds with any further claimants." Cassell Aff. ¶ 13. But, Ms. Rynn's account maintains that on August 22, 2001 she informed Tom Oliveri of the Western Growers' Association (an organization of which Fresh Kist is a member) that her firm could not represent Fresh Kist "due to the conflict of interest." Rynn Decl. ¶ 6. While these accounts do not necessarily conflict, they color the exchange very differently and might indicate a disputed fact. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The court reaches its conclusion, however, considering only the undisputed fact that JCW perceived a conflict of interest between *itself* and *Fresh Kist.*

money from WWP after June 5, 2001. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; JCW's Compl. ¶ 19 (C.A. No. 01–1225). Consequently, this court grants Fresh Kist's motion for summary judgment on this ground and orders JCW to disgorge the $59,189.40 received from the WWP PACA trust on or after June 5, 2001 for pro rata distribution among all of WWP's PACA creditors.

The court's narrow ruling today only applies to situations in which a beneficiary knows that a PACA trustee is insolvent or nearly so and the remedies prescribed by the court reflect the rights among beneficiaries that already exist when a trustee becomes bankrupt. JCW contends that a number of untenable consequences will result from such a ruling. These include: "free-riding" by unpaid sellers waiting for another supplier to take action against a buyer, an immense burden on sellers seeking enforcement of PACA rights to notify other beneficiaries, irreparable damage to the reputation of the buyer, and the creation of class actions to settle every PACA claim. Def. JCW's Mot. for Summ.J. at 17–20. These consequences would not occur under the court's narrow ruling which is limited to the circumstance in which a PACA beneficiary *knows* the debtor is insolvent, not where the beneficiary merely suspects some vague financial trouble. Indeed, when the buyer has not shown some sign of financial weakness by its inability to pay, a PACA claim would probably not exist in court. This case is peculiar, however, because undisputed evidence indicates that JCW knew that WWP was insolvent. JCW's Compl. ¶ 19 (C.A. No. 01–1225). And when the beneficiary has such knowledge, the appropriate course is a distribution of PACA assets similar to what would occur upon the trustee's bankruptcy.

See *Milton Poulos*, 947 F.2d at 1353. Therefore, the situations warned against by JCW are no more likely in this case than any case in which a buyer has already become bankrupt. This court is reluctant to fashion statutory requirements not provided by the legislature. See *Public Citizen*, 491 U.S. at 468, 109 S.Ct. 2558. In this situation, however, the "race to the courthouse" scenario, when the winning beneficiary keeps most or all of the trust funds, constitutes an absurd result contrary to Congress' intent and contrary to this court's interpretation of the relevant law. See *Kirsanow*, 290 F.3d at 361.

The consent order in C.A. No. 01–1225 deems JCW's PACA claim meritorious. Indeed, this court agrees that JCW is a proper PACA beneficiary with perfected rights to its benefits, and thus denies Fresh Kist's request for a judgment to the contrary. The parties in that case did not provide the court with the relevant facts that would have permitted that court to reach today's determination because that case sought a different form of relief than the relief sought here. JCW's Compl. (C.A. No. 01–1225). Consequently, this court holds that JCW must share the trust benefits it obtained with other beneficiaries of similar standing.[3]

### 4. JCW is Not a Bona Fide Purchaser Entitled to Keep the WWP PACA Assets Despite the Claims of Beneficiaries

JCW argues that even if Fresh Kist had a claim to the PACA benefits it received from WWP, JCW is a bona fide purchaser and thus the court may not force JCW to disgorge its benefits. Def. JCW's Mot. for Summ.J. at 23. It is settled law that a bona fide purchaser of trust assets "receives the assets free of any

---

**3.** The court does not find that JCW acted in bad faith as there is little guidance from the courts on the PACA beneficiary's duties.

claim by the trust beneficiaries." *Endico Potatoes*, 67 F.3d at 1067. In *Boulder Fruit*, a factoring company purchased the receivables of a PACA buyer who subsequently defaulted in payments to growers. *Boulder Fruit*, 251 F.3d at 1269. Although this sale resulted in dissipation of the trust assets, the court held that the PACA creditors could not force the factoring company to disgorge proceeds from the receivables. *Id.* at 1272. The court reasoned that because the trustee received fair value for the assets or receivables, the sale had not dissipated the trust. *Id.*

The bona fide purchaser issue in *Boulder Fruit* and similar cases are distinct from the issue in the present case. Whereas the bona fide purchaser cases involve disputes between bankruptcy creditors and PACA beneficiaries, the instant case involves a dispute between two beneficiaries. *Boulder Fruit*, 251 F.3d at 1269; *Endico Potatoes*, 67 F.3d at 1067. A beneficiary who receives trust assets pursuant to a PACA judgment, as JCW did, is a beneficiary for purposes of obtaining the judgment. *See* 7 U.S.C. 499e. For JCW to then become a bona fide purchaser to protect against the claims of other beneficiaries would be illogical. Significantly, the bona fide purchaser in *Boulder Fruit* was a third party that bought assets *without dissipating trust assets*. 251 F.3d at 1272.

In contrast, while JCW was entitled to payment for the commodities it provided to WWP, it obtained the assets in question *pursuant* to trust obligations and thereby dissipated the trust assets. Def. JCW's Mot. for Summ.J. at 9–11. Thus, the bona fide purchaser defense is unavailable for JCW.

### 5. Fresh Kist Has No Burden to Prove the Origin of the Assets Paid from WWP to JCW

 Fresh Kist does not have to prove that the assets that WWP paid to JCW

derived from produce sales. Although the issue of whether assets derived from PACA receivables often presents itself in claims by beneficiaries, it is not an issue in the present case. If a bankrupt trustee cannot prove which of her assets derived from PACA receivables, all of her assets are treated as part of the PACA trust and applied to the claims of PACA beneficiaries prior to other creditors. *Lombardo*, 12 F.3d at 809; *Sanzone–Palmisano*, 986 F.2d at 1014. The reasoning behind the adoption of this rule is that buyers commonly commingle receivables from perishable commodities. Thus, placing the burden of tracing on PACA beneficiaries would make recovery of benefits nearly impossible. *Id.*

 This case is distinct from cases that address the PACA debtors' (the trustees or the buyers) burden to prove the origin of assets. In this case, one PACA creditor (the beneficiary or the seller), JCW, argues that another PACA creditor, Fresh Kist, must prove that before the court can order JCW to disgorge the money JCW obtained from WWP after knowing of its insolvency, Fresh Kist must prove that the money derived from a PACA trust. Def. JCW's Mot. for Summ.J. at 16. JCW reasons that the burden to prove the origin of these assets resided with WWP until it paid JCW, then the burden necessarily shifted to the movant, Fresh Kist. *Id.* This argument, though reasonable on its face, ultimately proves unpersuasive. Bankrupt debtors must first pay PACA claims from pooled assets if they cannot prove the assets did not derive from the sale of a particular beneficiary's products. *Sanzone–Palmisano*, 986 F.2d at 1014. Thus, the actual monies paid by a PACA debtor quite possibly may derive from sources other than the sale of the beneficiary's produce. Once the trustee pays pursuant to a judgment under

PACA, however, the funds constitute the benefits of the PACA trust. *See Id.* In contrast, had JCW simply received a payment from WWP for produce delivered without filing an action to obtain it, then Fresh Kist might have the burden of proving the origin of the funds. Since the monies received by JCW from WWP resulted from litigation pursuant to PACA, however, they necessarily constitute trust benefits. Consequently, Fresh Kist has no burden to prove the origin of those monies and JCW should return $59,189.48 to the WWP PACA trust for pro rata distribution to the PACA beneficiaries.

### D. The Court Denies Two of the Requests in Fresh Kist's Motion for Summary Judgment

The court grants Fresh Kist's Motion for Summary Judgment in that JCW must return $59,189.48 to the WWP PACA trust. The court also denies the following portions of Fresh Kist's motion: (1) Fresh Kist's request that Norfolk and Berkley disgorge payments received from the WWP PACA trust and (2) Fresh Kist's claim that JCW has lost its PACA beneficiary status due to the settlement of payment terms pursuant to its Consent Order against WWP.

 First, there is no evidence that indicates that the defendants Norfolk and Berkley had knowledge regarding WWP's insolvency. Pl.'s Statement ¶ 29. Unlike JCW's PACA complaint against WWP, Norfolk and Berkley's complaint made no mention of WWP's insolvency. *Id.* Neither Norfolk nor Berkley should disgorge any PACA benefits received from WWP because the plaintiff has shown no evidentiary basis on which the court could find that Norfolk or Berkley knew of WWP's insolvency.

Second, JCW did not lose its status as a PACA beneficiary. JCW and WWP agreed to a 15–week payment schedule *after* JCW filed a claim to enforce its PACA rights. Consequently, this agreement does not affect JCW's PACA rights.

 PACA requires that the seller and buyer of produce agree to payment terms that do not exceed 30 days. 7 C.F.R. § 46.46(e)(1). After JCW filed suit, WWP agreed to a payment schedule of trust benefits that extended over a 15–week period. Pl.'s Mot. for Summ.J. at 12–13. Fresh Kist contends that this payment schedule's length of time violates the PACA maximum and renders JCW's PACA rights void. Pl.'s Mot. for Summ.J. at 13. Both cases Fresh Kist cites in support of voiding JCW's PACA rights address payment schedules determined *prior to* enforcement of PACA rights. *Id.; Lombardo,* 12 F.3d at 809; *Greg Orchards & Produce, Inc. v. Roncone,* 180 F.3d 888, 891 (7th Cir.1999). In this case, however, it was a settlement, not a credit transaction, that extended beyond 30 days. Consequently, the court rules that JCW has perfected its rights as a PACA beneficiary and grants JCW's Motion for Summary Judgment on this specific issue.[4]

### E. Fresh Kist's Objections to JCW's PACA Claim

Pursuant to this court's order dated September 24, 2001, all beneficiaries of the WWP PACA trust filed claims asserting their rights to the funds in the trust. Fresh Kist filed an objection to JCW's claim, arguing: (1) that JCW overstated its claim by nearly $60,000.00 and (2) that JCW failed to attach documents supporting its claim. Pl.'s Obj. to Claims at 1.

---

4. This is the only portion of JCW's Motion for Summary Judgment that the court grants. The court denies the remaining portions.

First, Fresh Kist alleges that JCW has overstated its claim by nearly $60,000.00 because the payments that JCW received pursuant to its settlement with WWP are not part of its PACA claim. Pl.'s Obj. to Claims at 4. Yet Fresh Kist argues that JCW must disgorge these funds because they constitute a dissipation of PACA trust benefits. *Id.* This position contradicts itself. If the payments received by JCW are not part of its PACA claim, as Fresh Kist alleges, then the plaintiff could not compel disgorgement because the bona fide purchaser defense discussed earlier would prevent it. Therefore, the court holds that JCW has not overstated its claim. JCW's disgorgement will include $59,189.40 and thus it must also be part of JCW's PACA claim. Like all of the trust beneficiaries with perfected claims, JCW will receive a pro rata distribution of the funds in the trust.

Next, Fresh Kist alleges that JCW failed to attach documents to support $10,013.00 of its claim against WWP. Pl.'s Obj. to Claims at 4. JCW resolved this matter by providing the court with a missing invoice. JCW's Reply to Obj. to Proof of Claim Ex. 1. The failure to attach the document was a minor oversight that JCW remedied. Thus, the court overrules this objection.

## IV. CONCLUSION

For all these reasons, the court grants the plaintiff's motion for summary judgment against JCW in part and denies the plaintiff's motion for summary judgment against the defendants Norfolk and Berkley.[5] The court denies and grants it in part the defendant JCW's cross-motion for summary judgment. By 60 days from the date of this opinion, JCW must place $59,189.40 into the court's registry for pro

rata distribution to the beneficiaries of WWP's PACA trust. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 31st day of July 2002.

## ORDER

GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT J.C. WATSON'S MOTION FOR SUMMARY JUDGMENT; OVERRULING THE PLAINTIFF'S OBJECTION TO PROOF OF CLAIM

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 31st day of July 2002, it is

**ORDERED** that the plaintiff's motion for summary judgment is **GRANTED in part** and **DENIED in part;**[6] and it is

**FURTHER ORDERED** that within 60 days from the date of this opinion, JCW must place $59,189.40 into the court's registry for pro rata distribution to the beneficiaries of WWP's PACA trust; and it is

**ORDERED** that the defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part;** and it is

**FURTHER ORDERED** that the plaintiff's Objection to Proof of Claim is **OVERRULED.**

**SO ORDERED.**

---

5. The rulings are described in detail on page five of this Memorandum Opinion.

6. The rulings are described in detail on page five of the corresponding Memorandum Opinion.