H.C. SCHMIEDING PRODUCE CO.,
INC., WM Rosenstein & Sons Co., M
& M Farms East Coast, Inc., E.W.
Kean Co., Inc., Eagle Fruit Traders,
LLC, Pinto Bros., Inc. and Wick &
Bros., Inc., Plaintiffs,

Del Monte Fresh Produce N.A., Inc.,
and Amco Produce, Inc.,
Intervenor–Plaintiffs,

v.

ALFA QUALITY PRODUCE, INC., Alfa
Quality, Inc., A & F Produce, Inc.,
Mouiz Khalifeh, Wonder Fruit Inc.
and Anthony Fraggetta, Defendants.

No. 08 Civ. 0367 (BMC).

United States District Court,
E.D. New York.

Jan. 15, 2009.

Bruce Levinson and Gregory Adam Brown, Law Offices of Bruce Levinson, Esq., New York, NY, for Plaintiffs.

Devin Oddo, Martyn and Associates, Cleveland, OH, Stephen Michael Kasper, Stephen M. Kasper, Esq., New York, NY, for Intervenor–Plaintiff Del Monte Fresh Produce N.A., Inc.

Anthony M. Rainone, Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, Newark, NJ, for Intervenor Plaintiff Amco Produce, Inc.

Alfa Quality Produce, Inc. and Alfa Quality, Inc., pro se.

A & F Produce, Inc., pro se.

Wonder Fruit Inc., pro se.

Anthony Fraggetta, Howard Beach, NY, pro se.

Mouiz Khalifeh, pro se.

### *MEMORANDUM DECISION AND ORDER*

COGAN, District Judge.

This is an action arising out of claims by several produce sellers under the federal Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c). One of the intervenor-plaintiffs, Amco Produce, Inc. ("Amco"), has filed a cross-claim against plaintiffs Wm. Rosenstein & Sons, Co. and Eagle Fruit Traders, LLC, (together, "Rosenstein") to recover allegedly preferential payments that Rosenstein received from the debtors, and Rosenstein has moved to dismiss the claim under Fed.R.Civ.P. 12(c) on the ground that PACA does not recognize a claim for preferential payments to a *bona fide* creditor.

For the reasons set forth below, Rosenstein's motion to dismiss the cross-claim is granted.

## BACKGROUND

Rosenstein was initially part of two separate plaintiff groups that brought claims against defendants Alfa Quality Produce, Inc., Alfa Quality, Inc., Wonder Fruit, Inc., A & F Produce, Inc., Mouiz Khalifeh and Anthony Fraggetta for violations of the trust provisions of PACA. Plaintiffs are sellers of produce who have not been paid by Alfa; they allege that Alfa and its principals have been engaging in a corporate shell game to keep doing business while avoiding paying their debts. Although there were two actions commenced by the parties, they have been consolidated.

Amco, another produce seller, has intervened alleging violations of PACA against defendants. Amco subsequently amended its complaint in intervention to include a claim against Rosenstein seeking disgorgement for participating in the dissipation of assets of the PACA trust. Specifically, Amco has alleged that Rosenstein, despite either knowing or having information that would have led it to reasonably know of defendants' financial instability or insolvency, received PACA trust assets from defendants in payment of Rosenstein's pre-existing claims. Amco alleges that as a co-beneficiary of the trust, Rosenstein owed a duty to Amco not to accept payment of its claims with trust assets to the exclusion of other PACA trust beneficiaries.

Rosenstein has moved for judgment on the pleadings arguing that under PACA, co-beneficiaries of a PACA trust do not owe a duty to one another not to receive trust assets as payment for their claims.

## DISCUSSION

"Dismissal under Rule 12(c) 'is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.'" *Dewees v. Legal Servicing, LLC,* 506 F.Supp.2d 128, 131 (E.D.N.Y.2007) (*quoting Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988)). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted." *Id.* (citations omitted). For purposes of a motion to dismiss under Rule 12(b)(6), the Court accepts as true plaintiff's allegations, and draws all plausible inferences in plaintiff's favor. *See City of N.Y. v. Beretta U.S.A. Corp.,* 524 F.3d 384, 392 (2d Cir.2008).

The Second Circuit reviewed the history of PACA and its trust provisions in *American Banana Co., Inc. v. Republic National Bank of New York,* 362 F.3d 33, 36–38 (2d Cir.2004). "In the early 1980s, Congress reexamined PACA in the wake of a sharp increase in defaults among buyers, and decided that sellers needed additional protection." *"R" Best Produce, Inc. v. Shulman–Rabin Marketing Corp.,* 467 F.3d 238, 241 (2d Cir.2006) (*citing* H.R.Rep. No. 98–543, at 3 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406). To provide this protection, Congress amended PACA by adding § 499e(c) requiring produce dealers, such as defendants, to hold funds, including sales proceeds, "in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents." 7 U.S.C. § 499e(c)(2).

Congress explained that "[t]he purpose of the trust is to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." *"R" Best Produce, Inc.,*

467 F.3d at 241 (citations and internal quotation marks omitted). In addition, "PACA regulations confirm that trustees have a duty to pay the full amount of the debt owed to their produce suppliers." *Id.* (*citing C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 487 (2d Cir.2001)). In order to meet this duty, produce purchasers "are required to maintain trust assets in a manner that such assets are freely available to satisfy the outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1).

■ In addition to certain notice requirements placed on sellers, PACA regulations provide for a "maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust [of] 30 days after receipt and acceptance of the commodities." *Id.* § 46.46(e)(2). Therefore, if a seller/beneficiary agrees to a payment plan that extends the buyer/trustee's window of payment beyond the prescribed thirty-day period, the beneficiary risks losing the trust protection provided by PACA. *See American Banana Co., Inc.*, 362 F.3d at 45 ("Sellers who are willing and able to enter into such agreements [extending a payment period beyond thirty days] ... neither need nor deserve the elevated priority they receive under PACA's trust provisions.").

Included in the trust protection provided by PACA is not only an elevated priority over other creditors but also the right to a *pro rata* distribution of trust assets in the event of insolvency. *See* Regulations Under the Perishable Agricultural Commodities Act, 49 Fed. Reg. 45,735, 45,736 (Nov. 20, 1984) (to be codified at 7 C.F.R. pt. 46); *see also Finest Fruits, Inc. v. Korean Produce Corp.*, No. 87 CIV. 6579, 1988 WL 96028, at *3 (S.D.N.Y. Sept. 6, 1988) ("[T]he legislative intent behind the PACA trust regulations was that trust assets be distributed on a pro rata basis between those suppliers who file valid claims.").

When interpreting the trust provisions of PACA, the Second Circuit has held that "[g]eneral trust law applies to PACA trusts unless such law directly conflicts with the PACA statute." *D.M. Rothman & Co., Inc. v. Korea Commercial Bank of New York*, 411 F.3d 90, 94 (2d Cir.2005) (citations omitted). Thus, we must ask two questions: (1) does general trust law create a cause of action in favor of a creditor of an insolvent corporation to set aside preferential payments made to another creditor of the corporation; and (2) if not, does PACA modify the general trust law by creating such a claim and enforcement mechanism?

■ It is well-established at common law that an insolvent corporation in any industry, not just the produce business, holds its assets in trust for its creditors. *In re Poseidon Pool & Spa Recreational, Inc.*, 391 B.R. 234, 241 (Bankr.E.D.N.Y. 2008) (*citing In re Fechheimer Fishel Co.*, 212 F. 357, 364 (2d Cir.1914) ("[W]hen a corporation becomes insolvent, a trust arises in respect to the administration of its assets for the benefit of its creditors." (citations omitted))). Directors of an insolvent corporation have a fiduciary duty to creditors in effect serving as trustees. *Southern Indus., Inc. v. Jeremias*, 66 A.D.2d 178, 184, 411 N.Y.S.2d 945 (2d Dep't 1978). This is no different than the duty that exists under PACA, except that PACA arguably expands, or at least clarifies that, this obligation additionally includes "controlling persons," not just directors. *See Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007). Furthermore, the common law is equally clear that payment of *bona fide* debts of an insolvent corporation to outsiders is not improper despite the fact that these payments deplete the remaining as-

sets available for creditors. *In re Sharp Int'l Corp.,* 403 F.3d 43, 54 (2d Cir.2005) ("[A] mere preference between creditors does not constitute bad faith.... Nor does it matter that the preferred creditor knows that the debtor is insolvent."); *Irving Trust Co. v. Chase Nat. Bank,* 65 F.2d 409, 410–11 (2d Cir.1933); *First Nat. Bank & Trust Co. of Port Chester v. New York Title Ins. Co.,* 171 Misc. 854, 859, 12 N.Y.S.2d 703 (N.Y.Sup.Ct.1939) ("At common law and in the absence of statutory prohibition, an insolvent debtor has the right to prefer one creditor over others.").

By allowing preferential payments, the common law recognizes the business reality that distressed debtors must make hard decisions about who to pay and who not to pay. Creditors threatening asset seizures are more likely to get paid than creditors with a more passive approach. Key suppliers are more likely to be paid on their past debts as an inducement to extend further credit than former suppliers that the debtor no longer needs. The common law reflects a policy decision that, in the absence of fraud, the distressed debtor should be allowed leeway to make these choices and, through them, to try to achieve the survival of the business.

■ Legislative enactments and caselaw, however, have altered this common law policy in at least two ways. First, statutes like section 719 of the New York Business Corporation Law provide that payments made to shareholders, directors or officers of an insolvent corporation must be set aside even if they would otherwise be *bona fide.* In effect, this bars insolvent corporations from preferring their insiders over outside creditors. *See Southern Indus., Inc.,* 66 A.D.2d at 184, 411 N.Y.S.2d 945 ("The courts of many jurisdictions have held that the preferential satisfaction of debts owed by insolvent corporations to their directors, over debts due to other general creditors, is barred by the common law." (citation omitted)). These statutes indeed have common law antecedents. *See id.* This limited prohibition of preferences may be viewed as conclusively presuming that debts to insiders are not *bona fide,* or that debts owed to insiders should be regarded as equity and thus paid only after full satisfaction of debt claims in the event of insolvency.

A second notable exception to this rule is found in the preference recovery provision of the Bankruptcy Code, which establishes a ninety-day (or one year, for insiders) preference recovery mechanism. 11 U.S.C. § 547(b)(4)(A). That is, if the corporation was insolvent at the time it made payments to *bona fide* creditors, anytime up to ninety days before it filed for bankruptcy, the trustee can recover those payments in full. It does not matter if the creditor knew or should have known at the time he received the payment that the debtor was insolvent, or if he pressured or refrained from pressuring the debtor for payment. The recovery is not based on his knowledge of the debtor's financial condition. He still must return the preference payment to the trustee. The trustee will then include that recovery in the pot to be allocated amongst all general creditors including those creditors who had been paid in the preference period and had the money clawed back.

The Bankruptcy Code creates a number of defenses to this preference recovery provision. *See id.* § 547(c). Among the most important is the so-called "new value" defense, which means that if an existing *bona fide* creditor extends additional credit to a debtor, and is paid in the ordinary course for that new extension, then the debtor's payment is not subject to the claw back. *Id.* § 547(c)(1).

by an insolvent corporation, even though it is holding its funds in trust for its creditors. That was and is the state of the common law before, at and since the enactment at PACA.

 I see nothing in PACA that changes the common law in this regard. As explained above, the purpose of PACA is to elevate the priority of produce sellers over other classes of creditors; PACA does not create any special rights among such produce sellers *inter se*. An insolvent corporation in any business owes a fiduciary duty to its creditors not to dissipate assets, but preference payments by definition reflect the payment of *bona fide* debts and thus are not a breach of any fiduciary duty. PACA appears to merely codify this principle in the produce business under the law of trusts, not change it.

 In analyzing whether PACA effected a change to the law of trusts, it is important not to confuse PACA's clearly stated requirement of *pro rata* distribution with the creation of an implied preference recovery action that could be brought by one creditor against another. I accept without hesitation that funds coming within the registry of the Court or held and acknowledged by the PACA trustee pursuant to an agreement between creditors and the PACA trustee could only be distributed *pro rata*. *See* Regulations Under the Perishable Agricultural Commodities Act, 49 Fed. Reg. 45,735, 45,736 ("Where a court is involved, USDA would recommend to the court that the available trust assets be distributed on a pro-rata basis to all beneficiaries who have protected their right to trust benefits."). I also accept that under PACA, a court should establish a bankruptcy-like claims procedure for identified funds; that distributions of those funds should be *pro rata;* and that creditors should have the right to object to claims of other creditors as excessive or

invalid. *Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154, 159 (11th Cir.1990) (*citing* 7 U.S.C. § 499e(c)(3)). However, it is a far cry from recognizing the concept of *pro rata* distribution to creating a remedy for preference payments that would actually increase the trust and which, at least as the instant case is presently postured, might constitute the entirety of the trust *corpus* (as no *res* has yet been identified for this trust). Without some guidance from Congress under PACA, there is no basis for implying such a remedy.

There also are substantial details of the suggested remedy that would have to be filled in. Amco, for example, does not contend, although it could, that there should be a specific "reach back" time period measured from the filing of the first PACA collection action, much as 547 of the Bankruptcy Code provides for a 90–day or one year period from the date of the filing of the petition. Instead, relying on *Fresh Kist Produce, LLC v. Choi Corp., Inc.,* 223 F.Supp.2d 1 (D.D.C.2002), Amco advocates a standard of allowing recovery of the preference if the creditor "knew or should have known" of the debtor's insolvency at the time he received payment. But as shown above, that standard is unknown to the common law, which expects and allows just the opposite—that a creditor who thinks that his right to payment might be in jeopardy by the debtor's insolvency will push all the harder to get paid.

The "knew or should have known" standard relied on by Amco and *Fresh Kist* comes from cases dealing either with the obligation of an interested trustee, *i.e.,* a trustee who is both holding funds on behalf of creditors and who himself has an interest in those funds, or an insider with special access to the debtor. *See, e.g., D.M. Rothman & Co., Inc.,* 411 F.3d at 93; *Fresh Kist Produce, LLC,* 223 F.Supp.2d at 8 (*citing Dabney v. Chase Nat'l Bank of*

*City of New York,* 196 F.2d 668, 672–73 (2d Cir.1952)). These cases essentially hold that a trustee or insider should not distribute to himself his own share if he has reason to know there will not be enough for the other creditor-beneficiaries. *Dabney,* 196 F.2d at 673. However, that concept is plainly inapplicable here. Rosenstein is not a trustee. It never agreed to assume trustee responsibilities. Nor is Rosenstein an insider; it had no special relationship with the debtor that allowed it to manipulate the debtor other than, perhaps, that the debtor wanted to keep doing business with it more than Amco—a relationship that the common law does not recognize as "special" enough to make Rosenstein an insider. Rather, Rosenstein, just like Amco, is a mere creditor. In the absence of either some misconduct or a no-fault preference recovery statute like Bankruptcy Code § 547, Rosenstein, itself a creditor, should not find itself on the wrong side of a legal caption.

 I therefore respectfully disagree with the analysis set forth in *Fresh Kist.* That analysis was based on the Court's assumption that "under trust law, co-beneficiaries are in a fiduciary relationship with each other so that one beneficiary may not secretly secure for himself a special advantage in the trust administration." 223 F.Supp.2d at 8. As authority for that statement, the Court cited George Gleason Bogert & George Taylor Bogert, *The Law Of Trusts And Trustees* § 191 at 478 (rev. 2d ed. 1979). Although the citation to this treatise does support the assumption that the *Fresh Kist* court made, the cases cited by the treatise itself for this point either do not address it or directly refute it. *See id.* at 478 n. 29 (citing *In re Lagges' Estate,* 361 Pa. 205, 64 A.2d 832 (1949), as holding that "[a] trustee may sell trust realty to a remainderman beneficiary and the latter may hold for himself and is under no duty to the other beneficiaries ....", and *Krensky v. De Swarte,* 335 Ill. App. 435, 82 N.E.2d 168 (1948), as holding that "[b]eneficiaries of a liquidating trust in which the property of an insolvent corporation is being handled are not in a fiduciary relation to each other.... The beneficiaries are like stockholders in a corporation."). To be sure, a co-beneficiary who is an insider may owe a fiduciary duty to his co-beneficiaries. But it is his status as an insider, not as a co-beneficiary, that creates this duty.

The Second Circuit has similarly made it clear that courts should not imply a cause of action for recovery in a statutory scheme based on the alleged "wrongful" conduct of a creditor who is merely trying to get paid because the debtor is distressed. In *In re Sharp Int'l Corp.,* a bankruptcy trustee (there, a debtor-in-possession) sued a creditor for receiving payments on its loan even though the creditor knew or should have known that the debtor had committed a massive fraud and therefore would be unable to pay its other creditors. The payments at issue, however, had been received outside of the bankruptcy preference period. Even though the creditor knew that the funds it received were the product of fraudulent conduct by the debtor, the Second Circuit rejected the argument that a creditor holding a *bona fide* claim was doing something wrong in trying to get paid:

> The decisive principle in this case is that a mere preference between creditors does not constitute bad faith.... Nor does it matter that the preferred creditor knows that the debtor is insolvent....
>
> [A] lack of good faith "does not ordinarily refer to the transferee's knowledge of the source of the debtor's monies which the debtor obtained at the expense of other creditors."

403 F.3d at 54–55 (*quoting Boston Trading Group, Inc. v. Burnazos,* 835 F.2d 1504, 1509 (1st Cir.1987)), and *citing HBE Leasing Corp. v. Frank,* 48 F.3d 623, 633 (2d Cir.1995); *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.,* 191 A.D.2d 86, 90–91, 599 N.Y.S.2d 816 (1st Dep't 1993). *Sharp* thus presents a far more egregious case in terms of the acts of the debtor and the knowledge of the creditor than does the instant case, where the only allegation is that Rosenstein sought and received payment on a *bona fide* claim out of legitimate business proceeds, even though those payments were effectively at the expense of other creditors. *See also Irving Trust,* 65 F.2d 409, 410–11 ("It is difficult to imagine a preferential transfer which does not incidentally hinder and delay creditors, for, whenever an insolvent debtor pays one of his creditors in full, he thereby puts the cash or property so used beyond the reach of execution by the others ... yet the securing or paying of an actual debt, in good faith, without any design injurious to creditors beyond that implied in giving the preference, was not deemed a fraudulent conveyance under the principles of the common law and the statute of Elizabeth.").

 Just as Rosenstein's position is not comparable to that of a trustee or insider, Amco's position also is not akin to that of a trustee. That is significant because Amco, in bringing its cross-claim, is purporting to act like a trustee and to have the rights of a trustee to recover allegedly diverted trust assets for the benefit of all creditors. No one has asked me to approve that status, and I see nothing in PACA that would allow me to do that nor that would confer it on Amco by operation of law. It is true that there is nothing illegal per se about a trustee having an interest in a trust recovery. Trust beneficiaries may expressly agree to it, *see* Restatement (Third) of Trusts § 78 cmt. c(3),

or an equity court could order the appointment of a trustee with a fully disclosed interest. *See* Restatement (Second) of Trusts § 108 cmt. d. I also have no reason to question Amco's good faith. Nevertheless, it seems to me that allowing a co-creditor to unilaterally act like a trustee without a pre-appointment vetting or a post-appointment accounting creates a situation rife with opportunities for mischief.

The absence of a preference recovery claim also is apparent from the jurisdictional grant in the statute. It authorizes district courts to exercise jurisdiction "to entertain ... actions by trust beneficiaries to enforce payment from the trust." 7 U.S.C. § 499(e)(c)(5). It says nothing about allowing a beneficiary to act like a trustee and recover preference payments on behalf of itself and all creditors.

Finally, the express provision for broad preliminary injunctive relief in PACA further weighs against the implied recognition of a preference recovery right. Specifically, the statute provides that a court may "entertain ... actions by the Secretary [of Agriculture] to prevent and restrain dissipation of the trust." *Id.* Courts have construed this as allowing creditor-beneficiaries to obtain the same injunctive relief. *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.,* 222 F.3d 132, 141 (3d Cir.2000). There is no reason why this prohibition on dissipation of assets does not or could not include distributions to trust beneficiaries. If it did, then trust beneficiaries who have notice of the injunction could be liable for contempt if they received and retained trust proceeds, even if in payment of their *bona fide* claim. *United States v. Paccione,* 964 F.2d 1269, 1274 (2d Cir.1992) ("A person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt."). However, under Amco's preference recov-

ery theory, the only effect of such an injunction would be to substitute the contempt remedy for what Amco believes is an already-existing disgorgement remedy for the preference. It seems unlikely that Congress would create an available recovery mechanism if in fact the obligation not to receive preferential payments already existed under the law.[1]

There are yet additional reasons why the absence of a preference recovery cause of action need not be prejudicial to Amco's position. First, to the extent that assets subsequently come into the trust, nothing prevents me considering the prior payments Rosenstein has received and applying a credit for those payments against any claimed *pro rata* distribution from the trust. Indeed, because Rosenstein received full payment on at least some portion of its claim while trust beneficiaries will likely receive only a percentage of what they are owed, it may be appropriate to reduce Rosenstein's *pro rata* share under the PACA trust on a percentage basis. That issue is not before me now and may only come before me if some trust assets are identified.

Second, nothing in PACA prevents a creditor who believes he has suffered a loss in his distributive share by reason of preferential payments from filing a bankruptcy petition against the debtor. By doing so, he will trigger the appointment of a bankruptcy trustee and the ninety-day preference recovery provision so that money can be recovered by the bankruptcy trustee and the petitioning creditor can recover his *pro rata* share.

In fact, I have on several occasions suggested to the parties that considering the numerous alleged fraudulent transfers through multiple defendant entities, the debtor's failure to account, the clear presence of insolvency, and the potential claims for preferences in this action, some or all of them could be better served by committing this matter to bankruptcy court and having a trustee appointed rather than by having this Court administer an insolvent estate. *Cf. SEC v. American Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir.1987) ("We see no reason why violation of the Securities Act should result in the liquidation of an insolvent corporation via an equity receivership instead of the normal bankruptcy procedures, which are much better designed to protect the rights of interested parties." (citation and internal quotation marks omitted)). The parties have expressed their preference for PACA litigation outside of bankruptcy court, as is their right. Amco, however, cannot have it both ways. Having eschewed its bankruptcy remedy in favor of PACA, it cannot obtain recovery of preferences through a remedy allowed only under the Bankruptcy Code.

## CONCLUSION

Rosenstein's motion to dismiss the cross-claim is granted.

**SO ORDERED.**

---

1. In fact, one of the plaintiffs aligned with Rosenstein, H.C. Schmieding, obtained an injunction at the outset of these cases enjoining the PACA trustee from dissipating trust assets. Amco has not raised any claim that Rosen-

stein aided and abetted a violation of that injunction by receiving payments from the PACA trustee, perhaps because the payments were received prior to issuance of the injunction.