**SIX L'S PACKING CO., INC., Plaintiff,**

v.

**POST & TABACK, INC., Joel Taback, in his individual capacity, Alan Taback, in his individual capacity, Steven Taback, in his individual capacity, and Dana Taback, in his individual capacity, Defendants.**

**Krass–Joseph, Inc., Northeast Trading, Inc., Phil Abramowitz, Co., Inc., and Paul Steinberg Associates, Inc., Plaintiffs,**

v.

**Post & Taback, Inc., Dana Taback, Alan Taback, Joel Taback, and Steven Taback, Defendants.**

Nos. 01 Civ. 0573 (JSR), 01 Civ. 0934 (JSR).

United States District Court, S.D. New York.

March 5, 2001.

Michael J. Keaton, Keaton & Associates, P.C., Glen Ellyn, IL, Theodore T. Mairanz, Neiman, Ginsburg & Mairanz, P.C., New York City, Mark C.H. Mandell, Annandale, N.J., for plaintiffs.

Paul T. Gentile, Gentile & Dickler, New York City, for defendants.

Louis W. Diess, III, McCarron & Diess, Washington, D.C., for Arkansas Tomato Shippers, LLC, Chiquita Brands North America, Coosemans Montreal, Quebec, Custom Produce Sales, Inc., East Coast Brokers & Packers, Inc., Harllee Packing, William Rosenstein & Sons, Co., David Scherer.

Sherylee F. Bauer, Silverman, Collura & Chernis, P.C., New York City, for intervenor.

## ORDER

RAKOFF, District Judge.

On January 23, 2001, plaintiff 6L's Packing Company ("6L's"), a beneficiary of a statutory trust created by the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*, commenced lawsuit 01 Civ. 0573 against defendant Post & Taback, Inc. (the statutory trustee) and its three current owners and recent former co-owner, Dana Taback, Alan Taback, Joel Taback, and Steven Taback, seeking prompt payment of monies overdue 6L's from Post & Taback. A few days later, however, on January 31, 2001, the parties jointly submitted, and the Court signed, a Stipulation and Order granting judgment to 6L's in the amount of $269,000 and further providing that Post & Taback would pay the judgment amount in four installments to be paid on February 1, 2001, February 2, 2001, February 7, 2001, and February 14, 2001, respectively. The provision for prompt payment was premised, *inter alia,* on Post & Taback's representation, which it made implicitly to the Court and explicitly to the parties, *see* transcript of hearing of 2/9/01 (reciting earlier representations), that its ability to pay other creditors who qualified as PACA beneficiaries would not be impaired by the payment ordered in 01 Civ. 0573.

It soon appeared, however, that this representation was improvident and that some of the very concerns that had prompted 6L's to seek relief were already impacting other PACA beneficiaries of Post & Taback. On February 7, 2001, therefore, four other such PACA beneficiaries, namely, Krass–Joseph, Inc., Northeast Trading, Inc., Phil Abramowitz Co., Inc., and Paul Steinberg Associates, Inc., commenced action 01 Civ. 0934 against the same defendants, seeking, in effect, a pro rata distribution of Post & Taback's trust assets to all its PACA beneficiaries. In response, Post & Taback, now represented by new counsel, admitted that it was unable to meet its trust obligations and that, indeed, after more than 50 years in business, it had now closed its doors.

In a proposed consent injunction, plaintiffs in 01 Civ. 0934 moved, jointly with Post & Taback, to enjoin Post & Taback from making the remaining two payments,

totaling $144,220, to 6L's (the first two payments, totaling $125,020, having already been paid) and that counsel for plaintiffs in 01 Civ. 0934 and counsel for Post & Taback jointly serve as the equivalent of receivers, collecting all Post & Taback receivables, liquidating its assets, and arranging, after notice to all PACA claimants, for an equitable pro rata distribution of the Post & Taback PACA trust. They further proposed that their fees for these services be paid by Post & Taback from the proceeds of its PACA trust. 6L's responded by attacking the proposal in virtually all respects.

In response to these developments, the Court held a joint evidentiary hearing on March 1, 2001, *see* transcript, at which the parties in 01 Civ. 0934 established through competent evidence and to the Court's satisfaction that Post & Taback presently has acknowledged PACA trust obligations well in excess of $2 million and disputed additional PACA claims against it of at least $3.8 million, whereas its cash on hand is less than $300,000 and its likely collectibles are around $700,000. While it also has illiquid assets that may be worth in excess of $1.5 million (chiefly in the form of certain lease rights known as "units"), there is no doubt that Post & Taback is currently in default of the strict duties owed to its PACA beneficiaries and that Court intervention is necessary to protect the beneficiaries of the trust. To this end, the Court makes the following rulings:

(1) The above-captioned cases are hereby consolidated for all purposes.

(2) The motion to intervene brought by eight additional PACA creditors of the Post & Taback PACA trust, namely, Arkansas Tomato Shippers, LLC, Chiquita Brands North America, Coosemans Montreal, Quebec, Custom Produce Sales, East Coast Brokers & Packers, Inc., Harllee Packing, William Rosenstein & Sons Co., and David Scherer, is granted on consent.

■ (3) The Order of January 31, 2001 and concomitant judgment are hereby modified, pursuant to Rule 60(b), Fed. R.Civ.P., and the Court's inherent powers, to prohibit the third and fourth payments of $144,220 at this time. While in light of its prior representations and agreements, Post & Taback will be estopped from challenging in any respect the payments totaling $125,020 that have already been made to 6L's pursuant to the January 31 Order, as to the remaining obligation of $144,220 6L's will need to pursue its claim in accordance with the procedures described below, subject, however, to the special provision of paragraph 13, below.

(4) In order to prevent any further dissipation of PACA trust funds, *see* 7 C.F.R. § 46.46(a)(2), Post & Taback is hereby ordered, commensurate with its statutory obligation as a trustee holding funds on behalf of unpaid PACA suppliers, to promptly collect all Post & Taback accounts receivable and place them, along with all other monies belonging to the PACA trust, in an interest-bearing escrow account. Post & Taback shall also promptly undertake to sell, at fair market value, all other Post & Taback assets and to place the proceeds thereof in the same account. In this regard, the Court is satisfied that the proposed sale of Post & Taback's "units" for $1.6 million is a fair and reasonable price.

(5) Within one week hereof, Post & Taback shall compile and file with the Court a list including the names, business addresses, and telephone numbers of all potential PACA claimants, regardless of whether Post & Taback believes them to be valid claimants. Among other things, this list shall include the relevant information for all the potential claimants on whose behalf the United States Department of Agriculture has sent Post & Taback informal complaints.

(6) Within two weeks hereof, Post & Taback shall notify by regular mail each potential PACA claimant of the need to comply with the deadlines detailed below for submitting a PACA proof of claim. On the same day, Post & Taback shall also

make additional efforts to notify claimants by posting an appropriate notice in *The Packer*, *The Produce Reporter*, and any other produce industry publication it deems appropriate.

■ (7) All costs, including attorneys' fees, incurred by Post & Taback in fulfilling the obligations set forth in paragraphs 4, 5, and 6 above, as well as any other obligations imposed upon Post & Taback by this Order and/or by its obligations as a PACA trustee, shall *not* be paid, directly or indirectly, from PACA trust funds, *see C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 486–87 (2d Cir.2001), but instead shall be paid, jointly and/or severally, from the personal funds of the individual defendants named herein.

(8) In order to ensure the finality of any judgment in this case, any person or entity claiming to be a PACA trust beneficiary of Post & Taback must file with the Court within 30 days of the date of the mailing described in ¶ 6 above a complaint in intervention that satisfies the relevant Rules of Civil Procedure and must serve copies of the complaint on all plaintiffs to these actions (including the intervening plaintiffs named in ¶ 2, above) and the defendants. All such claimants are hereby granted leave to intervene without further notice or motion, and all intervenors shall be deemed parties to these cases and shall be bound by the terms of all orders entered in these consolidated cases. Unless excused for good cause shown, any PACA claimant of the Post & Taback trust who fails to timely file and serve such a complaint in intervention is forever barred from joining in this case or asserting any claims based upon PACA against the defendants or their officers or agents, and from asserting any interest in the Post & Taback PACA trust assets.

(9) Within ten days of filing a complaint in intervention, each intervenor must submit to the Court a Proof of Claim, attached to which must be all documents upon which the intervenor intends to rely to prove its standing as a Post & Taback PACA trust beneficiary and its entitlement thereupon. All present plaintiffs (including the intervenors described in ¶ 2, above) must submit the same within ten days of the date of this Order. Any untimely claims will be disallowed. Any documents not attached to the Proof of Claim shall be inadmissible at any evidentiary hearing or trial in these proceedings, with the exception of any documents used to rebut an objection to an intervenor's claim.

■ (10) In order to assist the Court in evaluating the claims, the Court hereby appoints James Niss, Esq. as a Special Master pursuant to Fed.R.Civ.P. 53(b). *See also Fishgold v. OnBank & Trust Co.*, 43 F.Supp.2d 346, 348 (W.D.N.Y.1999); *Norton Enters. v. TKO Farms, Inc.*; 1996 WL 411597, at *2 (N.D.Cal. July 17, 1996); *cf. Raymond L. Park, Inc. v. Continental Farms & Produce Co.*, 1989 WL 159580, at *1 (C.D.Cal. Mar.8, 1989). Counsel for all parties should promptly supply the Special Master with copies of all papers filed in these actions to date, as well as any papers filed hereinafter. Because the Special Master will be acting on the Court's behalf in performing quasi-judicial duties and for the joint benefit of all Post & Taback PACA creditors, his reasonable fees and expenses shall be paid from Post & Taback's PACA trust funds. *See* Fed. R.Civ.P. 53(a). In this regard, the Special Master shall charge for his time at an hourly billing rate of $150 per hour, and shall submit detailed invoices to the Court for its review, subject to comment from all claimants, who shall also receive copies of the invoices. Payment will be drawn from the escrow account described in ¶ 4, but only after written approval by the Court.

(11) Within 10 days after the deadline for the submission of the intervenors' claims, the Special Master shall send to all claimants and the defendants in this action a notice of the name and amount of each claim. The Special Master shall notify each claimant and the defendants that any objections to a claim must be made within

10 days of the notice of claims ("Objection Deadline"). Any party seeking to review any proof of claim or related documents may make arrangements with the Special Master, provided that any copying charges shall be incurred by the requesting party.

(12) Any objections to any PACA claim must be submitted to the Special Master and served upon the relevant claimant by the Objection Deadline. The objection must set forth the relevant legal and factual basis for the objection. Within ten days of the date of any objection, a claimant may file with the Special Master and with the objector a response to the objection.

(13) Any PACA claim listed on the Proof of Claim to which no objection has been filed prior to the Objection Deadline shall be deemed a valid PACA claim for the full amount stated on the Proof of Claim. In addition, the remaining 6L's claim of $144,220 shall automatically be deemed valid in accordance with ¶ 3, above. The Special Master shall draw up a list of all such claims and submit it to the Court.

(14) The Special Master shall exercise his best efforts to resolve any disputed claims. If the Special Master is unable to resolve any such dispute, such dispute and the Special Master's recommendation for its resolution shall be submitted to the Court for *de novo* review.

(15) After the Objection Deadline, the Special Master shall promptly propose a method for dealing with the pro rata distribution of the claims. The method used in *Norton Enters. v. TKO Farms, Inc.*, 1996 WL 411597 (N.D.Cal. July 17, 1996) may provide a helpful starting point.

(16) The Special Master shall coordinate with Post & Taback as to the timing of any pro rata distribution and all other aspects of the procedures outlined above. The Special Master shall promptly notify the Court if Post & Taback is not acting in an expeditious or proper manner with respect to any aspect of these proceedings.

SO ORDERED.