"R" BEST PRODUCE, INC., Debruyn Produce Company, Inc., A & J Produce Corp., A Trading, AFL Hothouse, Inc., and A & J Trucco, Inc., Plaintiffs,

Continental Food Group, LLC., Mayrsohn International Trading Co., Baker Packing Co., Silver Creek Produce, LLC., Les Jardins Agripro, Inc., Impact Brokerage Corp., William Consalo & Sons Farms, Inc., Frank Gargiulo & Sons, Inc., Sun Valley Potato Growers, Inc., and Paul Steinberg Associates, Inc., Plaintiffs–Appellees,

D.M. Rothman, Co., Plaintiff–Intervenor–Appellee,

P.J. Produce, Inc., Defendant–Intervenor–Defendant–Appellee,

Christopher Kelly and Alphas Co. of N.Y. Inc., Defendants–Intervenors–Appellees,

Frank Falleta, Defendant–Cross–Defendant,

Lee Loi Industries, Inc., Defendant,

Sunterra Produce Traders, Inc. and Jacobson Produce, Inc., Movants,

v.

SHULMAN–RABIN MARKETING, CORP., Ana Distribution, Inc., Blaine Larsen Farms, Inc., B.T. Produce Co., Inc., Bronco Produce Corp., D'arrigo Bros. Co. of New York, Inc., Doral Produce Corporation, Fierman Produce Exchange, Inc., Frankie Boy Produce Corp., Kleiman & Hochberg, Inc., Krisp–Pak Sales, Corp., Morris Okun, Inc., Northeast Trading, Inc., Rubin Bros. Produce Corp., Top Banana LLC., Ven–Co. Produce, Inc., and Westwood Banana Co., Inc., Intervenors–Plaintiffs,

Gold Digger Apples, Inc. and Sol Fresh Produce, Inc., Intervenors–Plaintiffs–Appellees,

East West French Farms, LLC., Claimant,

Union Pacific Railroad Company, Intervenor–Appellant.

Docket No. 04–6352–CV.

United States Court of Appeals, Second Circuit.

Argued: Dec. 15, 2005.

Decided: Oct. 26, 2006.

See publication Words and Phrases for other judicial constructions and definitions.

———

Louis W. Diess, III & Kate Ellis, McCarron & Diess, Washington, D.C.

(Bruce Levinson, New York, NY, on the brief), for Plaintiffs–Appellees.

Jonathan F. Ball, Janssen Keenan & Ciardi P.C., Philadelphia, PA, for Intervenor–Appellant.

Before: POOLER, KATZMANN, and B.D. PARKER, Circuit Judges.

B.D. PARKER, JR., Circuit Judge:

For several years the Union Pacific Railroad Company ("Union Pacific") transported perishable agricultural goods from various suppliers to P.J. Produce, Inc., for sale at the Hunts Point Terminal Market in New York City. P.J. Produce eventually defaulted on payments owed to its suppliers, as well as to Union Pacific. As a result, Continental Food Group, LLC ("Continental Food"), an unpaid supplier, sued P.J. Produce to enforce the trust provisions of the Perishable Agriculture Commodities Act ("PACA"), 7 U.S.C. § 499e(c). That section requires produce dealers, such as P.J. Produce, to hold perishable agricultural commodities purchased on short-term credit, as well as proceeds from the sale of those commodities, in trust for the benefit of unpaid sellers until full payment has been made. *Id.* § 499e(c)(2).

Union Pacific appeals from an order of the United States District Court for the Southern District of New York (Sprizzo, J.) denying its motion for leave to intervene to collect its unpaid transportation costs as administrative expenses from the trust assets. Because Union Pacific may not recover its transportation costs ahead of PACA trust beneficiaries, we affirm.

**BACKGROUND**

After Continental Food and other unpaid sellers of perishable agricultural commodities sued P.J. Produce to enforce the trust provisions of PACA, all qualified sellers were invited to join the suit, and many, as trust beneficiaries, filed PACA claims against P.J. Produce. Since P.J. Produce's assets were insufficient to pay the trust creditors in full, only produce sellers were notified of the proceedings. Union Pacific did not claim to be a PACA trust beneficiary, but moved to intervene to recoup the costs of transporting produce to P.J. Produce, on the ground that such costs were administrative expenses of the trust. Several of the trust beneficiaries opposed Union Pacific's motion to intervene. The district court denied intervention on the grounds that transportation costs are not administrative expenses and Union Pacific was not entitled to be paid ahead of PACA trust beneficiaries. For the reasons discussed below, we affirm.

**DISCUSSION**

A.  *Standard of Review*

We review a district court's denial of a motion to intervene for abuse of discretion. *Patricia Hayes Assocs., Inc. v. Cammell Laird Holdings U.K.,* 339 F.3d 76, 80 (2d Cir.2003). Where, as here, a statute does not provide either an unconditional or a conditional right to intervene, *cf.* Fed.R.Civ.P. 24(a)(1), (b)(1), "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *In re Bank of N.Y. Derivative Litig.,* 320 F.3d 291, 300 (2d Cir.2003) (internal quotation marks omitted). The court considers substantially the same factors whether the claim for intervention is "of right" under Fed.R.Civ.P. 24(a)(2), or "permissive" under Fed.R.Civ.P. 24(b)(2). *See In re Bank of N. Y.,* 320 F.3d at 300 n. 5.

■ "Failure to satisfy *any one* of these [four] requirements is a sufficient ground to deny the application." *Id.* at 300 (internal quotation marks omitted). Thus, to justify intervention in the underlying PACA trust action, Union Pacific must be able to demonstrate an interest in that action. The dispositive question is whether Union Pacific had a right to be paid ahead of the PACA beneficiaries for what it claims are administrative expenses of the trust. If it did not, Union Pacific had no interest to protect and, consequently, no right to intervene.

### B. *PACA*

■ We reviewed the history of PACA and its trust provisions in *American Banana Co., Inc. v. Republic National Bank of New York*, 362 F.3d 33, 36–38 (2d Cir. 2004). Congress enacted PACA in 1930 to regulate the interstate sale and marketing of perishable produce. *See* H.R.Rep. No. 98–543, at 3 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406; *Am. Banana*, 362 F.3d at 36. Among other things, PACA provides for the licensing of commission merchants, brokers, and dealers in agricultural commodities. *See* 7 U.S.C. § 499c. It also bars a variety of unfair trade practices, and provides various remedies when they occur. *See id.* §§ 499b, 499e. PACA requires buyers to make "full payment promptly" for all commodities received from sellers, *id.* § 499b(4), and allows unpaid sellers to seek damages in either administrative or judicial proceedings. *Id.* § 499e(a), (b).

In the early 1980s, Congress reexamined PACA in the wake of a sharp increase in defaults among buyers, and decided that sellers needed additional protection. *See* H.R.Rep. No. 98–543, at 3 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406. Because of the perishable nature of the goods being sold, sellers often found themselves in the position of unsecured creditors of buyers whose creditworthiness could not be verified. If defaults occurred, sellers could look only to the commodities, which would have already perished. As unsecured creditors, they typically stood in line behind banks and other lenders who had obtained security interests in the defaulting purchaser's inventories and receivables. *See Am. Banana*, 362 F.3d at 37.

To relieve the burden on sellers, Congress amended PACA in 1984 by adding § 499e(c), which requires dealers such as P.J. Produce to hold sales proceeds "in trust for the benefit of all unpaid suppliers or sellers of such commodities." 7 U.S.C. § 499e(c)(2). The amended statute requires dealers to hold proceeds in trust "until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers [or] sellers." *Id.; see Am. Banana*, 362 F.3d at 37–38. Section 499e(c)(2) defines the corpus of the trust as all produce received from sellers, including "all inventories of food or other products derived from" the produce, "and any receivables or proceeds from the sale of such" produce or its derivative products. 7 U.S.C. § 499e(c)(2).

The purpose of the trust is "to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." H.R.Rep. No. 98–543, at 2 (1983), *reprinted in* 1984 U.S.C.C.A.N. 406; *see also* 7 U.S.C. § 499e(c)(1) (recognizing the "burden on commerce in perishable agricultural commodities ... caused by financing arrangements under which" short-term credit to dealers is secured only by an interest in the perishable goods themselves). PACA regulations confirm that trustees have a duty to pay the full amount of the debt owed to their produce suppliers. *See C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 487 (2d Cir.2001). The regulations

also provide that purchasers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations *to sellers of perishable agricultural commodities.*" 7 C.F.R. § 46.46(d)(1) (emphasis added). Thus, the legislative history and the text of the statute as well as the implementing regulations all make clear that trust assets are intended exclusively to benefit produce suppliers. *See Am. Banana*, 362 F.3d at 38 (observing that the implementation of § 499e(c) "afforded [sellers] a highly unusual trust beneficiary status that permitted them, in the case of defaults, to trump the buyers' other creditors, including secured ones"); *see also D.M. Rothman & Co., Inc. v. Korea Commercial Bank of N. Y.*, 411 F.3d 90, 93–94 (2d Cir.2005). Transportation providers such as Union Pacific are simply not a part of this picture.[1]

## C. *Common Law Claim*

Although it does not claim to be a PACA trust beneficiary, Union Pacific argues that, under common law trust principles, it should be allowed to recoup its unpaid shipping costs as administrative expenses of the trust. In support of this claim, Union Pacific asserts that its "services were rendered in connection with the transportation of trust assets (i.e., perishable agricultural commodities upon which the PACA trust had already been impressed)," and that without such services "there would be substantially less trust assets for distribution."

This Court has previously noted that PACA trusts are "governed by general principles of trust law." *Albee Tomato,*

*Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 615 (2d Cir.1998); *see also In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir.1996); *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir.1995). We have clarified, however, that common law trust principles apply in PACA cases only to the extent that they "do not undermine the most fundamental principle of statutory interpretation that the language of the statute must govern." *C.H. Robinson*, 239 F.3d at 486. In *C.H. Robinson*, we held that a PACA trustee could not use funds from the trust to pay attorneys' fees incurred in collecting accounts receivable held in trust for the beneficiary sellers. *Id.* at 488. Having observed that "the intent of Congress in enacting PACA's trust provision was to provide unpaid produce sellers with greater protection from the risk of default by buyers," we concluded that "[a]llowing a defunct PACA trustee to pay other creditors with PACA funds before the seller is paid in full would frustrate this purpose." *Id.* at 488. Likewise, allowing Union Pacific to recover its shipping costs from the assets of the trust before the sellers are paid in full would contradict the purpose and language of PACA and its accompanying regulations. *See generally Pac. Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279 (3d Cir.2006).

Union Pacific primarily relies on two lower court decisions that allowed certain administrative expenses to be paid from PACA trust funds. *See Six L's Packing Co., Inc. v. Post & Taback, Inc.*, 132 F.Supp.2d 306, 309 (S.D.N.Y.2001) (allowing a court-appointed Special Master's fees and expenses to be paid out of PACA trust

---

1. The regulations accompanying PACA refer in various places to the role of a "shipper," defined as "any person operating at shipping point who is engaged in the business of purchasing produce from growers or others and distributing such produce in commerce by resale or other methods, or who handles such

produce on joint account with others." 7 C.F.R. § 46.2. Whether or not Union Pacific qualifies as a shipper under this definition, the trust provisions of the statute and regulations speak exclusively of sellers and suppliers of perishable agricultural commodities. *See* 7 U.S.C. § 449e(c); 7 C.F.R. § 46.46(d).

funds); *In re United Fruit & Produce Co., Inc.,* 119 B.R. 10, 13 (Bankr.D.Conn.1990) (allowing a bankruptcy trustee to be compensated from PACA trust funds). Both cases are of little assistance to Union Pacific. In *Six L's,* the district court expressly held that the trustee's attorneys' fees "shall *not* be paid, directly or indirectly, from PACA trust funds." 132 F.Supp.2d at 309 (citing *C.H. Robinson,* 239 F.3d at 486–87). The trust funds could be used to pay the Special Master's fees, in contrast, because the Special Master would be "acting on the Court's behalf in performing quasi-judicial duties and for the joint benefit of all … PACA creditors." *Id.* The court in *United Fruit* held that a bankruptcy trustee could be compensated from PACA trust funds for "necessary services he provides which only benefit PACA creditors." 119 B.R. at 13. In *C.H. Robinson,* we noted that "[b]ankruptcy trustees and other collecting agents may not owe the same fiduciary duties [as PACA trustees] to PACA beneficiaries, and therefore the law governing them is inapplicable." 239 F.3d at 488.

Union Pacific's position does not resemble that of a Special Master or a trustee in bankruptcy. It provided its services directly to P.J. Produce, and did not act at the court's direction or for the exclusive benefit of the PACA beneficiaries. To characterize transportation costs as administrative expenses entitled to priority compensation would open the door to other creditors asserting similar claims and would subvert Congress's intent to protect sellers as the exclusive beneficiaries of the PACA trust. *See Pac. Int'l,* 462 F.3d at 285. Even if Union Pacific's charges would be considered administrative expenses under common law trust principles, we are not free to apply those principles where, as here, doing so would directly conflict with both the text of the statute and the purposes underlying it. *See id.; C.H. Robinson,* 239 F.3d at 486, 488.

### D. *Statutory Claim*

■ Despite the clear intent of Congress to give priority to unpaid sellers, Union Pacific maintains that its claim for transportation charges is supported by legislative policy and by the regulations implementing the statute. Union Pacific argues that it is entitled to transportation charges because they constitute "contemplated expenses" under § 46.46(e)(4) of the PACA regulations. That section states that "[t]he amount claimable against the trust by a beneficiary or grower will be the net amount due after allowable deductions of contemplated expenses … made in connection with the transaction by the commission merchant, dealer, or broker." 7 C.F.R. § 46.46(e)(4).

Although the regulations do not define "contemplated expenses," we conclude that they do not encompass transportation services. *See Pac. Int'l,* 462 F.3d at 286–87. Section 46.46 addresses transactions between buyers and sellers of produce, and identifies the sellers as beneficiaries of the PACA trust. While transportation services might, in some abstract sense, be understood as expenses incurred "in connection with" such transactions, this reading cannot be reconciled with the existence of a statutory trust created by Congress for the sole benefit of sellers and suppliers of produce. To hold otherwise would imply that § 46.46(e)(4) represents a significant exception to an otherwise consistent regulatory framework designed to benefit a specific class of creditors.

### CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Union Pacific's motion to intervene.