**In re VEG LIQUIDATION, INC.**
**f/k/a Allens, Inc. and All**
**Veg, LLC, Debtors.**

**Allens, Inc. and All Veg, LLC**

**v.**

**D & E Farms, Inc.**

**No. 5:13–bk–73597.**

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

Signed July 30, 2014.

Jason Klinowski and Elizabeth Janczak, Chicago, IL, for the debtor.

Greg Brown and Stanley Bond, Fayetteville, AR, for D & E Farms, Inc.

## ORDER

BEN BARRY, Bankruptcy Judge.

Before the Court are the *Debtor's Omnibus Objection to PACA Claims* filed on January 13, 2014 [doc. 417], and D & E Farms, Inc.'s response to the debtor's objection to PACA claims filed on February 3, 2014 [doc. 534]. The Court heard the objection and response on May 22, 2014, and at the conclusion of the hearing gave the parties until June 5, 2014, to file post-trial briefs. For the reasons stated below, the Court sustains the debtor's objection in part and overrules the objection in part.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The following order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014.

The debtor initially raised five objections to the claim of D & E Farms, Inc. [D & E] but withdrew two of its objections—related to attorney fees—at the beginning of the May 22 hearing. The remaining three objections were (1) that D & E charged an interest rate in excess of the maximum allowed rate of interest in Arkansas, (2) that D & E included freight and fuel charges in its PACA claim in violation of the PACA regulations that exclude "contemplated expenses," and (3) that D & E breached its fiduciary duty to the debtor by artificially inflating its claim by including those "contemplated expenses." D & E responded by arguing that (1) the federal PACA statute preempts state law concerning the rate of interest charged, and (2) the debtor is misreading the statute and the United States Department of Agriculture [USDA] regulations in its interpretation of "contemplated expenses."

The parties do not dispute that D & E is entitled to protection under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a et seq. [PACA]. The goods in question were perishable agricultural commodities (beans) that were received by a commissioned merchant dealer or broker (the debtor), and D & E provided the debtor with proper and timely notice of its intent to make a claim under the PACA trust. *See Cox v. Decas Cranberry Prods., Inc.* (*In re Meyer's Bakeries, Inc.*), 402 B.R. 314, 319 (Bankr.W.D.Ark.2009). What remains in dispute is the allowed amount of D & E's claim. Because resolution of the debtor's "contemplated expenses" argument is required before the Court can address meaningfully the debtor's interest rate argument, the Court will start there.

## "Sums Owing in Connection With"/Contemplated Expenses

■ Congress enacted PACA in 1930 " 'to provide a practical remedy to small farmers and growers who were vulnerable to the sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities.' " *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 780 (8th Cir.1991) (quoting *Chidsey v. Geurin*, 443 F.2d 584, 587 (6th Cir.1971)). The PACA statute provides that proceeds from the sale of perishable agricultural commodities shall be held in trust for the benefit of unpaid suppliers or sellers of those commodities "until full payment of the *sums owing in connection with such transactions* has been received by such unpaid suppliers, sellers, or agents." 7 U.S.C. § 499e(b) (emphasis added). This is known as the PACA trust fund.[1] One of

---

**1.** Congress added the trust fund language to the statute in 1984 to protect produce sellers

the issues in this case is the determination of what sums are included under the phrase *sums owing in connection with such transactions.*

■ To resolve this issue, the Court must first determine whether the plain language of the PACA statute is ambiguous. *In re Magic Restaurants, Inc.,* 205 F.3d 108, 114 (3d Cir.2000). If it is not ambiguous, "there is generally no need to look to administrative interpretations or to legislative history." *Id.* (citing *Ratzlaf v. United States,* 510 U.S. 135, 147–48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)). In other words, if the plain meaning of a statute expresses clearly the intent of Congress, " 'that is the end of the matter.' " *Demma Fruit Co., Ltd. v. Old Fashioned Enterprises, Inc. (In re Old Fashioned Enterprises, Inc.),* 236 F.3d 422, 425 (8th Cir.2001) (quoting *Chevron USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d

694 (1984)). In this instance, the Court finds that this section of the PACA statute is unambiguous.[2]

■ However, when Congress enacted PACA, it left a number of specific details to the regulatory discretion of the USDA. *Hull Co.,* 924 F.2d at 781 (leaving the task of prescribing the time "by which payment must be made" under 7 U.S.C. § 499e(c)(3) to USDA); *Wilson Mushroom Co. v. Davis Dist., Inc. (In re Davis Dist.),* 861 F.2d 416, 417 (4th Cir.1988) (recognizing "a number of procedural and substantive prerequisities to securing the protection of a PACA trust, the specifics of which the statute leaves largely to the regulatory discretion" of USDA). When Congress leaves details to the regulatory agency, " 'there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. . . . Such legislative regulations are given controlling weight unless they are arbitrary,

in the light of produce buyers' practice of granting security interests in the buyers' accounts receivable to lending institutions. *Tom Lange Co., Inc. v. Lombardo Fruit and Produce Co. (In re Lombardo Fruit and Produce Co.),* 12 F.3d 806, 808–09 (8th Cir.1993).

2. The Court's position is in concert with three circuit courts of appeal that have ruled specifically that this provision of the statute is not ambiguous. In 2002, the Ninth Circuit, after finding that the statute was unambiguous, stated that the plain meaning of " 'in connection with' encompasses not only the price of the perishable agricultural commodities but also additional related expenses, including contractual rights to attorneys' fees and interest, in a PACA claim." *Middle Mountain Land and Produce Inc. v. Sound Commodities Inc.,* 307 F.3d 1220, 1222–23 (9th Cir.2002). The court stated that Congress wrote the PACA statute broadly to include the value of commodities and expenses in connection with the sale of those commodities. *Id.* at 1223.

In 2004, the Eleventh Circuit found that the statute was unambiguous and that "sums owing" included the price of the commodities

and any additional expenses that buyers and sellers have bargained for in their contracts. *Country Best v. Christopher Ranch, LLC,* 361 F.3d 629, 632 (11th Cir.2004).

Finally, in 2006, the Third Circuit stated that when Congress allowed the "full payment of the sums owing in connection with [commodities] transactions," it unambiguously included related expenses that are contractually due. *Pacific Int'l Marketing, Inc. v. A7B Produce, Inc.,* 462 F.3d 279, 285–86 (3d Cir. 2006). The court cited cases that allowed attorney fees; prejudgment interest; and handling, pallet, and freight charges as included expenses in the phrase "sums owed in connection with."

Further, in 2007, the Second Circuit agreed with its "sister circuits" and stated that when attorney fees are included in the parties' contract, the fees can be awarded as "sums owing in connection with" a produce transaction under PACA. *Coosemans Specialties, Inc. v. Gargiulo,* 485 F.3d 701, 709 (2d Cir.2007). The Eighth Circuit has not yet addressed the issue of whether a contractual claim is recoverable as part of a PACA trust claim. *Wescott Agri–Products, Inc. v. Sterling State Bank, Inc.,* 682 F.3d 1091, 1093–94 (8th Cir.2012).

capricious, or manifestly contrary to the statute.'" *In re Old Fashioned Enterprises, Inc.,* 236 F.3d at 425 (quoting *Chevron USA, Inc.,* 467 U.S. at 843–44, 104 S.Ct. 2778); *see also* 7 U.S.C. § 499*o* ("The Secretary may make such rules, regulations, and orders as may be necessary....").

█ Even though the Court finds that the statutory language—*sums owing in connection with such transactions*—is not ambiguous, Congress may have delegated authority to the USDA to elucidate additional requirements under that specific provision. One such requirement under the Code of Federal Regulations states, "[t]he amount claimable against the [PACA] trust by a beneficiary or grower will be the net amount due after allowable deductions of contemplated expenses or advances made in connection with the transaction by the commission merchant, dealer, or broker." 7 C.F.R. § 46.46(e)(5). This regulatory language appears to address specifically how to determine what sums are "owing in connection with" a PACA protected transaction. However, the explanation of the amount claimable against the trust is subject to at least three interpretations.

The first interpretation is found in the preamble to the regulation itself. The preamble suggests that the language in the regulation means that a claim against the PACA trust is reduced by the amounts already paid by a buyer for contemplated expenses. The preamble to the regulation states:

Many contracts between agents and their principals involve advances of funds by the agent for seed, equipment, or payment of contemplated expenses. Section 46.46(f)(4) [now (e)(5)] makes it clear that money advances or *allowable expenses paid* are not a part of the trust, and that the amount claimable by the supplier, seller or grower is the net amount due after allowable deductions for advances and *all allowable expenses paid* by the agent.

Regulations Under the Perishable Agricultural Commodities Act; Addition of Provisions to Effect a Statutory Trust, 49 Fed. Reg. 45735–01, 45739 (November 20, 1984) (emphasis added). Although the term "contemplated expenses" is not defined in the statute or the regulations, it appears to refer to an expense that is contemplated between the parties at the time the parties entered into a contract. *See, e.g. Country Best v. Christopher Ranch, LLC,* 361 F.3d 629, 632 (11th Cir.2004) (holding that "sums owing in connection with" encompasses the price of commodities and related expenses the parties bargained for in their contracts); *Middle Mountain Land and Produce, Inc. v. Sound Commodities, Inc.,* 307 F.3d 1220, 1222–23 (9th Cir.2002) (stating that "in connection with" includes the price of commodities and additional related expenses including contractual rights). For example, if the parties contracted for the grower to supply freight at a negotiated rate, the freight rate charged would be a contemplated expense under the regulation. Under this first interpretation, if, prior to the grower making a claim under PACA, the buyer had paid for one of these contemplated expenses, that expense would not be subject to the grower's PACA claim; otherwise, the expense, even though it may have been "contemplated" with the contract, would still be subject to the PACA claim.

The Court agrees with the explanatory language of the preamble to the regulation. It is axiomatic that if an expense (whether contemplated or not) has already been paid by the buyer, then, even though the proceeds of the sale may be subject to a claim under PACA, the buyer should be allowed to deduct legitimate expenses the buyer has already paid. *See, e.g. Pappas*

& Co., Inc. v. Papazian Dist. Co., Inc., 46 Agric. Dec. 1882, 1885, 1989 WL 260257 (U.S.D.A.1989) (stating that freight charges paid by the consignee under a consignment contract—i.e. the buyer—were legitimate expenses that could be deducted from the grower's PACA claim because the charges were paid from proceeds belonging to the grower). However, the preamble discusses "allowable expenses paid," and neither the phrase "allowable expenses paid" nor the word "paid" appears in either the regulatory language or the statute. In fact, the statute requires no less than *full payment of* the *sums owing* to unpaid suppliers, sellers, or agents; if payment has already occurred, there is no longer a sum owing.

The second interpretation of the regulation was suggested by the Second Circuit Court of Appeals. In *"R" Best Produce, Inc. v. Shulman–Rabin Mktg., Corp.*, 467 F.3d 238 (2d Cir.2006), the court affirmed the district court in denying a transportation company's motion to intervene to collect transportation costs under PACA. The company asserted that its services were rendered in connection with the transportation of trust assets—the perishable agricultural commodities. *Id.* at 242. However, the court held that to allow such a claim would subvert Congress's intent to protect sellers as the beneficiaries of the PACA trust. *Id.* at 243. The transportation company also asserted a statutory claim arguing that its transportation charges were "contemplated expenses" under § 46.46(e)(4) [now (e)(5) ] of the regulations.

In finding that *contemplated expenses* did not include transportation services in this instance (because the company was neither a seller nor a supplier of produce), the court quoted the relevant portion of the regulation but shortened it to read that the amount claimable against the trust "will be the net amount due after allowable deductions of *contemplated expenses ... made* in connection with the transaction by the commission merchant, dealer, or broker." *"R" Best Produce, Inc.*, 467 F.3d at 243 (emphasis added). This reading suggests that the regulation contemplates two types of claims: first, a claim for the net amount due after allowable deductions of *contemplated expenses made in connection with* the transaction; and, second, a claim for the net amount due after allowable deductions of *advances made in connection with* the transaction. To read the regulation so broadly would require the court also to determine what a "contemplated expense made" entails. Because a party typically *makes* advances but *pays* or *incurs* expenses, the Court finds that this interpretation creates an ambiguity that does not exist in the statute.

Finally, the third interpretation of the regulation recognizes the most simple reading of the regulation: "[t]he amount claimable against the trust by a beneficiary or grower will be the net amount due after allowable deductions of [EITHER] contemplated expenses *or* advances made in connection with the transaction by the commission merchant, dealer, or broker." This is the interpretation advanced by the debtor under the rule of the last antecedent. Under this interpretation, the buyer is entitled to allowable deductions of either contemplated expenses *or* advances made to the grower/producer in connection with the PACA transaction (or, presumably, both). As stated above, a contemplated expense refers to an expense that is contemplated between the parties at the time the parties entered into a contract.

Although this may be a grammatically correct interpretation of the regulation, it is also manifestly contrary to the statute. For instance, two growers that provide identical produce and services to a buyer

could be treated differently. A grower proceeding without the assistance of counsel might enter into a contract for produce for a specific price per ton without breaking out the cost of fertilizer, pallet charges, transportation expenses, or fuel surcharges. Under this interpretation, every cost associated with the sale of the produce to the buyer would be covered under PACA as a sum owing in connection with the transaction because none of the additional expenses were "contemplated expenses" under the contract.

On the other hand, another grower who proceeds with the assistance of counsel might list with specificity every conceivable cost so that both parties knew exactly what was expected. The contract would spell out exactly how much fertilizer would cost per acre, the allowable transportation charges for each load (payable by the buyer but arranged by the seller), the range of fuel surcharge allowable per load, and any other expenses that could be contemplated by the parties. Under this interpretation of the regulation, this grower would not be entitled to PACA protection for any of the contemplated expenses, despite the fact that every one of the expenses was a sum owing in connection with the PACA transaction. Although each grower provided the same produce, the grower with the more sophisticated contract would be, in effect, penalized for his thoroughness.

The statute clearly expresses Congress's intent to pay in full all sums owing in connection with a PACA transaction to all unpaid suppliers or sellers of perishable agricultural commodities. The first interpretation of the regulation, although accurate, is too simplistic in that it expresses no more than common sense: an expense that has already been paid does not have to be paid a second time. Further, this interpretation does not apply to the facts in this case because D & E has not been paid for the freight and fuel charges it expended on behalf of the debtor. The second interpretation is neither logical nor reasonable. The Second Circuit Court of Appeals removed two words—"or advances"—when it quoted the regulation and, by doing so, confused the meaning of the regulation itself. Finally, the third interpretation may be grammatically correct, but it contradicts the statute by not allowing payment of all sums owing in connection with a PACA claim. In sum, the Court finds that the regulation that relates specifically to the amount claimable against the PACA trust—7 C.F.R. § 46.46(e)(5)—is "arbitrary, capricious, or manifestly contrary to the statute." *In re Old Fashioned Enterprises, Inc.*, 236 F.3d at 425 (quoting *Chevron USA, Inc.*, 467 U.S. at 843–44, 104 S.Ct. 2778). The Court also finds that the statute is clear and unambiguous and will "not defer to an agency position which is contrary to an intent of Congress expressed in unambiguous terms." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992).

■ For the reasons stated above, the Court finds that D & E's freight and fuel charges are sums owing in connection with its PACA claim and overrules the debtor's objection that D & E included the freight and fuel charges in its PACA claim in violation of the PACA regulations. Having found that the freight and fuel charges are sums owing in connection with D & E's PACA claim, the Court also overrules the debtor's objection that D & E breached its fiduciary duty to the debtor by artificially inflating its claim by including the freight and fuel charges.

### Interest

The debtor also objected to the rate of interest that D & E charged on its invoices, which exceeded the maximum al-

lowed rate of interest in Arkansas. D & E argues that "PACA's scheme of federal regulation of interstate produce sales is so pervasive that the reasonable inference is that PACA preempts the field as to produce sales." It also argues that because D & E is located in Pennsylvania and shipped produce to the debtor's processing plant in North Carolina, D & E is not bound by Arkansas law.

 The Constitution of the United States specifically provides that Congress has the power to preempt state law. U.S. Const. art. VI, cl. 2; *see also Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). The Supreme Court has found that state law must yield to federal law in at least two circumstances: first, in the event that Congress intends federal law to "occupy the field," and, second, if state law "is naturally preempted to the extent of any conflict with a federal statute." *Crosby,* 530 U.S. at 372, 120 S.Ct. 2288 (citing *Hines v. Davidowitz,* 312 U.S. 52, 66–67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). Preemption occurs when state law "stands as an obstacle" to the purpose of federal law. *Id.* at 373, 120 S.Ct. 2288. State law is nullified to the extent it actually conflicts with federal law; however, state law is not necessarily displaced in its entirety. *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *see also Dairy Fresh Foods, Inc. v. Ramette (In re Country Club Market, Inc.),* 175 B.R. 1011, 1015 (Bankr.D.Minn.1994) ("courts must sustain local regulations unless there is conflict with the federal scheme").

 Interest is allowed as a contractual right if it is provided for in the contract. Although in this instance the parties' one-page contract is silent concerning interest, each of the billing invoices used by D & E states unequivocally:

"[i]nterest at 18% added to unpaid balance." This amounts to an additional contract term under both the Uniform Commercial Code and Arkansas law. *See* Ark. Code Ann. § 4–2–207 (Repl.2001). The debtor has not objected to the additional term of the contract; rather, the debtor has objected to the claimed rate of interest as being in violation of Arkansas law. Under the Arkansas Constitution, the maximum rate of interest on contracts "shall not exceed seventeen percent (17%) per annum." Ark. Const. amend. 89, § 3. If an Arkansas contract exceeds the maximum allowed rate of interest, the contract is void as to principal and interest. Ark. Const. amend. 89, § 6. Under this provision, the debtor has requested the Court to disallow D & E's complete claim for the recovery of interest.

 As a preliminary matter, the Court finds that the law of Arkansas is applicable in this instance when not otherwise preempted by federal law. When the court is called on to resolve a conflict of law dispute, a bankruptcy court should apply the forum state's choice of law rules. *Bianco v. Erkins,* 243 F.3d 599, 601 (2d Cir.2001); *see also Jump v. Goldenhersh,* 619 F.2d 11, 13 (8th Cir.1980). In contractual choice of law disputes, Arkansas courts apply the law of the state with the most significant relationship to the contract, absent a contractual choice of law provision. *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC,* 411 S.W.3d 184, 189 (Ark.2012) (citing *Crisler v. Unum Ins. Co. of Am.,* 366 Ark. 130, 233 S.W.3d 658, 660 (2006)). Courts look at the following factors to determine which state has the most significant relationship to the contract: the place the contract was made; the place the contract was negotiated; the place the contract was performed; the location of the subject matter of the contract; and the domicile, residence, nationality, place of

incorporation, and place of business of the parties. *Crisler*, 233 S.W.3d at 660 (citing Restatement (Second) Conflict of Laws § 188 (1971)).

Without providing any evidence in support of its position, D & E argues in its post-trial brief that D & E had no presence in Arkansas, that it is located in Pennsylvania, and that it shipped produce to the debtor's plants in North Carolina from "numerous states including Pennsylvania and Florida." The parties' contract is signed by Robert Erlemeier, Vice President of D & E, and Steve Brown, on behalf of the debtor, and does not contain a choice of law provision or indicate where the contract was executed; however, the debtor's primary place of business is in Arkansas. The debtor introduced a freight rate schedule that showed freight rates to both Turkey, North Carolina, and Siloam Springs, Arkansas. Although D & E's address indicates it is located in Spring Grove, Pennsylvania, the delivered produce was grown in various states including Pennsylvania, South Carolina, North Carolina, Tennessee, Virginia, Maryland, and Delaware. Based on the scant evidence to establish any other state as having a significant relationship to the parties' contract, the Court finds that Arkansas has a significant relationship to the parties' contract and will apply Arkansas law when not preempted by federal law.

█ As stated earlier, the Court finds that the freight and fuel charges are sums owing in connection with D & E's PACA claim. Likewise, the Court finds that interest that is owed as part of the parties' contractual agreement is also a sum owing in connection with D & E's PACA claim. As a result, because interest is an element of the PACA transaction, federal preemption applies and the Court must nullify state law to the extent it conflicts with the PACA statute. The Court finds that the Arkansas law that voids a contract as to principal and interest is preempted by the PACA statutes that require "full payment of the sums owing in connection with" a PACA claim. 7 U.S.C. § 499e(c)(2). However, while the PACA statute allows for the payment of the sums owing in connection with the transaction, it is silent with regard to the amount of interest a party can charge under the parties' contract. Because there is no conflict between federal law and Arkansas law that sets the maximum rate of interest at 17% per annum, the Court finds that D & E is limited under Arkansas law to charge no more than 17% interest per annum. The Court sustains the debtor's objection to the amount of interest charged by D & E and limits D & E's recovery to no more than 17% interest per annum.

For the reasons stated above, the Court sustains the debtor's objection as to the rate of interest D & E is entitled to charge, limiting that interest to no more than 17% interest per annum, and overrules the debtor's objection to the inclusion of freight and fuel charges in D & E's PACA claim in violation of the PACA regulations that exclude "contemplated expenses." Because D & E properly included its freight and fuel charges, the Court finds that D & E did not artificially inflate its claim against the debtor by including those "contemplated expenses."

IT IS SO ORDERED.