15-1016-cv
*Harris-Clemons v. Charly Trademarks, Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of March, two thousand sixteen.

Present:
> PIERRE N. LEVAL,
> DEBRA ANN LIVINGSTON,
> SUSAN L. CARNEY,
> *Circuit Judges.*

_____

BETTY HARRIS-CLEMONS,

> *Plaintiff-Appellee*,

> v.                                                                     15-1016-cv

CHARLY TRADEMARKS, LTD.,

> *Appellant*,

CHARLY ACQUISITIONS, LTD., A NEVISIAN LIMITED LIABILITY COMPANY; SONY MUSIC ENTERTAINMENT, INC.

> *Defendants*.

_____

For Plaintiff-Appellee:                    KENNETH J. KRAYESKE, Kenneth J. Krayeske Law Offices, Hartford, Conn.

For Appellant:                          PETER R. AFRASIABI and Nima Kamali, One LLP, Newport Beach, Cal.

Boutin & Altieri, P.L.L.C., Fairfield, Conn.

**UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **VACATED** and the case is **REMANDED** for further proceedings consistent with this order.

Appellant Charly Trademarks Limited ("CTL") appeals from an order of the United States District Court for the District of Connecticut (Covello, *J.*), dated March 4, 2015, and filed March 5, 2015, denying its motion to intervene and to request relief from a judgment entered against Charly Acquisitions Limited ("Charly"), which identifies CTL as an "alias" of Charly. We assume the parties' familiarity with the underlying facts and procedural history of the case, which we describe here only as necessary to explain our decision.

## I.    Background

Plaintiff-Appellee Betty Harris-Clemons is a singer who recorded a number of songs in the 1960s, including the 1967 ballad "Nearer to You."   On August 11, 2006, Defendant Sony Music Entertainment's RCA Records ("Sony") released the fifth studio album by pop singer Christina Aguilera.   Titled *Back to Basics*, the double album included a song called "Understand," at issue here.   "Understand" uses a vocal sample from Harris-Clemons's song, "Nearer to You."   A39.   In August 2006, Sony negotiated a license for the rights to "Nearer to You" with Defendant Charly.   Under that agreement, Sony credited Charly in the booklet accompanying the *Back to Basics* album and agreed to pay Charly five cents per use for the "Nearer to You" sample.   But, according to Harris-Clemons, Charly never had authority to license "Nearer to You."   Sony, aware of a dispute between Harris-Clemons and Charly, did not

2

make any royalty payments and instead placed all royalties in an account until resolution of the dispute. By June 2012, that account had grown to contain $170,384.99 in royalties.

On July 6, 2012, Harris-Clemons filed a Complaint against Sony in the United States District Court for the District of Connecticut. On October 3, 2012, Harris-Clemons filed an Amended Complaint (dated September 28, 2012), adding Charly as the second defendant. Under the Amended Complaint, Harris-Clemons brought claims of breach of contract against Sony, copyright infringement against Sony and Charly, and unfair practices against Sony and Charly. In Count 1 against Sony and Charly, she also asserted an interpleader claim and entitlement to funds held in the account.

On November 29, 2012, the district court granted a motion by Harris-Clemons for interlocutory judgment as to the interpleader claim, which Sony had not opposed, and ordered Sony to transfer the royalty funds to the clerk of the court for deposit into an interest-bearing account. On January 3, 2013, Harris-Clemons filed two motions for default judgment against Charly. One motion sought a default judgment as to Count 1—interpleader—in accordance with the interlocutory judgment of interpleader that the district court had entered on November 29. Harris-Clemons contended that the clerk of the court should pay her the interpleaded funds because Charly had not appeared, plead, or otherwise defended the action. Harris-Clemons's other motion sought default judgment as to Counts 4 and 6—copyright infringement and unfair practices. On January 23, 2013, the district court granted both motions. It entered judgment as to Count 1, ordering the clerk of court to transfer to Harris-Clemons $170,384.99, along with any interest that had accrued on the account. It also granted judgment against Charly as to Counts 4 and 6. The district court scheduled a hearing to determine the amount of damages for Counts 4 and 6.

On April 4, 2013, Harris-Clemons filed a second motion to amend or correct the complaint, attaching the Second Amended Complaint to that motion. In the motion, Harris-Clemons explained that "[t]he main substance of the proposed amendment regarding Defendant Charly is to add the name[s] of multiple aliases under which Defendant Charly has done business." A88. Accordingly, "any judgment award after the hearing in damages may be executed against any of Defendant Charly's aliases once." *Id.* The motion asserted that Charly had "spread its assets over a number of aliases" and, in doing so, sought "to fleece musicians like [Harris-Clemons] out of royalties." *Id.* at 89. The motion to amend was unopposed, and on May 29, 2013, the district court granted it. The Second Amended Complaint asserted that Charly used an array of "aliases" (Charly Licensing ApS, Licensemusic.com ApS, Charly Holdings, Inc., Charly International ApS, Charly International Ltd., Charly Direct Ltd., Charly Trademarks, Ltd., Charly Records International ApS, and Charly Records, Ltd.). Charly, Harris-Clemons alleged, conducts business through—and is also known by—those aliases. Characterized as a series of fictitious names, the aliases were not added as parties to the lawsuit.[1]

On October 2, 2013, the district court entered judgment against Charly as to Counts 4 and 6. The district court determined that the amount owed was $42,095.62, exclusive of prejudgment interest and attorney's fees. The next day, the district court entered an Amended Judgment that specified:

> The plaintiff may recover her damages from the defendant Charly Acquisitions Ltd., or any of its following aliases, listed in the second amended complaint, for which the judgment shall apply: Charly Licensing ApS, Licensemusic.com ApS, Charly Holdings, Inc., Charly International ApS, Charly International Ltd., Charly

---

[1] The case caption on the Second Amended Complaint lists only Sony as the Defendant in the lawsuit. This seems to be an inadvertent error as paragraph 4 of the Second Amended Complaint names Charly Acquisitions Limited as a Defendant, as had the Amended Complaint.

Direct Ltd., Charly Trademarks, Ltd., Charly Records International ApS, Charly Records, Ltd., and Charly Licensing ApS.

A106 n.1.   On December 27, 2013, Harris-Clemons and Sony filed a joint motion stipulating to the voluntary dismissal of the action as to Sony, which the district court granted.

According to Harris-Clemons, she proceeded to domesticate the judgment against Charly in the United States District Court for the Middle District of Pennsylvania.   In doing so, she garnished property held there, namely, various domain names, including licensemusic.com. Harris-Clemons then sent a demand letter addressed to Charly for payment, but CTL, the Appellant here, sent a *sua sponte* reply asserting that the garnished property in fact belonged to CTL.   Harris-Clemons had identified CTL as one of Charly's various aliases in the Second Amended Complaint.   In its letter of March 14, 2014, CTL refused to issue payment for the domain names because, according to CTL, it is a "lawful independent corporation with its own charter and registration in Nevis," and Harris-Clemons "did not plead or prove [CTL] was an alter ego" of Charly, but had instead garnished its property solely on the basis of "vaguely alleg[ing] that it and . . . others were 'aliases'" in the lawsuit.   A127.

On May 3, 2014, CTL entered an appearance in the original case before Judge Covello and filed a motion to intervene in the action.   In the motion, CTL argued that the Second Amended Complaint had improperly named CTL as an alias of Charly, because CTL is actually "a distinct legal entity."   A108.   To support that argument, CTL submitted as evidence a "Certificate of Renewal" that purported to be from the Office of the Registrar of Companies of the Island of Nevis and that affirmed that CTL had paid an annual fee pursuant to the Nevis Business Corporation Ordinance of 1984 for the period ending January 29, 2014.[2]   CTL sought

---

[2] CTL submitted this certificate for CTL only on reply, explaining that it "was somehow accidentally omitted from filing."   A291.   In the first instance, CTL's counsel's declaration stated that attached were "true and correct copies of two certificates of renewal to verify that Charly Trademarks Ltd. . . . and . . .

intervention either as a matter of right under Federal Rule of Civil Procedure 24(a) or by permission under Federal Rule of Civil Procedure 24(b). In the memorandum of law supporting its motion to intervene, CTL argued that it was entitled to relief from the provision of the final judgment—identifying it as an alias of Charly and specifying that Harris-Clemons could recover damages from it—because CTL is a separate legal entity from Charly and was never served with process or given notice and opportunity to be heard in the litigation. Harris-Clemons opposed CTL's motion to intervene.

On March 4, 2015, the district court denied CTL's motion.[3] It found that CTL had not made its case for intervention as a matter of right, or for permissive intervention. Regarding intervention as a matter of right, the district court found that the motion was not timely, because CTL had "fail[ed] to specifically articulate when it received notice of the lawsuit." A366 (SPA7). In any event, even if the motion had been timely filed, the district court determined that CTL had not shown that "it was a distinct legal entity and, therefore, it d[id] not have an interest in the litigation that is distinct from [Charly] and that is impaired by the disposition of this action." A367 (SPA8). Further, because CTL had "failed to "provide evidence that it dealt with [Charly] at arms-length, as a separate corporation," the district court found that Charly had adequately represented CTL's interests in the litigation. *Id.* Last, the district court found that the facts in this case did not warrant granting permissive intervention. The district court explained that CTL had "failed to prove that it is a distinct legal entity from the existing defendant," Charly, and, therefore, CTL did "not have a claim that is separate from those that are already the subject of the judgment in this case." A368 (SPA9). This appeal followed.

Charly Acquisitions Ltd. are two separate distinct legal entities," but in fact attached only the Certificate of Renewal for Charly and not CTL. A111, A115.

[3] The district court did not address CTL's request, made in its memorandum of law supporting its motion to intervene, that the district court void or amend the judgment.

6

## II.     Discussion

"Intervention is a procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994).     In weighing a motion to intervene, a district court balances those two concerns and undertakes a fact-intensive inquiry.     *See id.*     We review a district court's denial of a motion to intervene for abuse of discretion.     *See Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996).

CTL challenges the district court's denial of its motion to intervene both as of right and by permission.     When evaluating a motion to intervene, a district court "considers substantially the same factors whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ. P. 24(b)(2)."     *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006).     Those factors include: "(1) timely fil[ing] an application, (2) show[ing] an interest in the action, (3) demonstrat[ing] that the interest may be impaired by the disposition of the action, and (4) show[ing] that the interest is not protected adequately by the parties to the action."     *Id.*     (quoting *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003)).     We have explained that "[f]ailure to satisfy any one of these [four] requirements is a sufficient ground to deny the application."     *Id.* (second alteration in original) (quoting *In re Bank of N.Y. Derivative Litig.*, 320 F.3d at 300).     In the proceedings below, the district court based its ruling on timeliness, though it also explained that the motion would not have satisfied the other three factors.

We conclude that the district court erred by denying CTL's motion to intervene without adequately considering whether Charly and CTL are in fact separate entities. CTL averred that it could demonstrate that it is a corporate entity separate and apart from Charly and that it should be permitted to intervene for the purpose of seeking relief from the default judgment insofar as that judgment states that Harris-Clemons may recover damages from CTL, on the theory that CTL is an "alias" of Charly.[4] But its motion papers included only the purported certificate of renewal, which was not properly authenticated, as evidence to make such showing. CTL sought a conference, presumably prepared to present additional evidence in support of its claim.

The district court concluded that CTL had failed in its motion papers to show when it received notice of the lawsuit, so as to establish the timeliness of its motion to intervene. The district court further determined that CTL had also failed to show that Charly had not adequately represented CTL's interests in the litigation, because CTL had provided no evidence that it was itself a distinct entity from Charly. In making that finding, however, the district court relied on an *absence* of evidence submitted. In the district court's view, the one piece of evidence that CTL provided—the purported certificate of renewal for CTL dated January 20, 2014, without indication of any date of formation—was "insufficient, in light of the surrounding facts, to establish CTL as a separate entity from [Charly]." A367 (SPA8). The district court noted the following facts in particular: that CTL conducts its business at the same address where Harris-Clemons served Charly; that it appears to own charlyacquisitions.com; that

---

[4] CTL asserts that the amended judgment is void as to CTL, because CTL is not an alias, but an independent corporation. To be clear, the default judgment was against Charly and was amended simply to include specific "aliases" of Charly. Although the terms "alias" and "alter ego" are sometimes used synonymously, the pleadings and amended judgment here employ "alias" to represent nothing more than a fictitious name or pseudonym. If CTL is in fact found to be a separate legal entity, then CTL may seek amendment of the judgment so as to remove its identification as an alias in the judgment. But such amendment would not affect the default judgment as to Charly.

8

charlyrecords.com was registered to CTL at the same address that licensemusic.com, an entity owned and operated by Charly, was registered; and that the e-mail contact for charlyrecords.com, owned by CTL, is william.rowley@charly-acquisitions.com and is the same address listed for licensemusic.com, owned by Charly.

The district court had a scant record before it as to the alleged independent corporate existence of CTL. Nevertheless, we think that CTL presented sufficient evidence—if barely so—to merit the opportunity to establish that it is a separate legal entity from Charly. On appeal, counsel for CTL represented that the two companies are separate entities and that he believes CTL was incorporated in 1999. On remand, the district court is directed to afford CTL an opportunity to prove those assertions about its corporate status through valid evidence (such as a properly authenticated certificate of incorporation) at a hearing. If CTL fails to show that it is a separate legal entity, then the district court should deny CTL's motion. On the other hand, if CTL demonstrates that it is a separate legal entity, and not merely an alias sometimes used by Charly, then there is no basis for the district court's determination that CTL's motion to intervene was untimely. One corporation, on learning that an affiliated corporation has been sued, ordinarily has no obligation to intervene in the suit to prevent a judgment being enforced against it. Nor in such circumstances would the district court be correct in concluding, as it did, that because CTL had not established that it was a different legal entity from Charly, its interests in the litigation were adequately represented by Charly.

## III. Conclusion

For the reasons stated above, we **VACATE** the district court's order denying CTL's motion to intervene and **REMAND** for additional proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk